## GANTT'S ADM'R *vs.* PHILLIPS.

1. In detinue by an administrator *de bonis non* against a purchaser from the widow, who was named executrix in the will, for the recovery of a slave bequeathed to her for life, her legal appointment and qualification as executrix may be presumed after the lapse of twenty years, without the production of the record, from the existence and production of the will and its probate, an inventory and appraisement of the estate purporting on its face to be made under the authority and sanction of the court, and proof that the executrix acted as such from the testator's death until her own, paid the debts of the estate, kept the property together as directed by the will, and exercised ownership and control over it; that the heirs and legatees acquiesced in her acts and deeds in reference to the property for more than twenty years, and that the records of the Court of Probate of the county in which the will was probated were loosely kept for a series of years about that time.

Gantt's Adm'r v. Phillips.

2. And in such case, the inventory and appraisement, and evidence of the acts and declarations of the executrix, legatees and distributees, are admissible, as laying the predicate for the court to leave to the jury the question of the legal appointment and qualification of the executrix.

3. If the executrix named in the will, to whom a life estate in slaves is bequeathed, takes out letters testamentary, and takes possession of the estate, returning an inventory thereof, her legacy thereby vests in her, unless she expressly dissents from the will; and the remainder limited upon her life estate becomes vested by the same act, and cannot on her death revert to the estate.

ERROR to the Circuit Court of Dalllas.

Tried before the Hon. NATHAN COOK.

DETINUE by the plaintiff in error, William E. Bird, as administrator *de bonis non*, with the will annexed, of Robert Gantt, deceased, against the defendant in error, for the recovery of a negro man slave, named Phil, alleged to have been the property of said testator in his lifetime, and of which he died in possession. The pleas were, *non detinet* and the statute of limitations. Verdict and judgment for the defendant below.

On the trial a bill of exceptions was allowed, by which it appears that the plaintiff offered in evidence the will of the testator, by which it appeared that he left to his six youngest children, to be equally divided among them, all his estate both real and personal. By the second clause of the will he says: "It is my desire that my wife, Elizabeth Gantt, during her natural life, or during her widowhood, shall possess, occupy and enjoy my said estate, for the support of herself and family."

The plaintiff also offered testimony tending to show that the testator died in possession of the slave in question, and that he was in possession of the defendant at the time of suit being brought, and proved the death of Elizabeth Gantt, the widow of the testator, in the early part of the year 1845. He also offered evidence tending to show a demand and refusal to deliver up the slave, and his value &c. The plaintiff also introduced, as a part of his evidence, the answer of the defendant in chancery, to a bill filed against him by the heirs of the testator, and proved by Dr. Gantt, the son of the testator, that he had never heard of any other administration on the estate of the testator than that of the plaintiff. This administration commenced in 1852. The copy of the will, read in evidence, purported to be

a transcript from a book of records of wills in Dallas County. Said will was dated in 1818, and was proved by Jesse Beene in 1823, the said testator having died in the last named year.

The said Dr. Gantt, on cross examination by the defendant, stated, that his mother, said Elizabeth Gantt, removed from this State to Louisiana about the 1st January, 1845, and carried all the remaining property of the estate with her; that no objections were made to her removing the property, either by heirs or creditors; that Robert Gantt in Tennessee, where he died, was indebted to one McGhee $1200; that said Elizabeth Gantt, after the death of Robert Gantt, paid said debt, by disposing of certain lands of the estate to that purpose, and also by disposing of a negro man belonging to the estate to said McGhee, for the same purpose.

The defendant proved by one White, that he was present at a trade made between said Elizabeth Gantt, the widow aforesaid, and the late Dr. Geo. Phillips, in the year 1831 or 1832; that Elbert Gantt, then a minor, and one of the legatees of said Robert Gantt, came over to the plantation of Dr. Phillips, and stated to him that his mother, the said Elizabeth, desired to trade for his negro man, and wished him, said Phillips, to go over to his residence to see her upon the subject; upon that request, said Phillips went over to see her, accompanied by said White, the witness; Mrs. Gantt then proposed to exchange two small boys, Phil and another, for a man belonging to said Phillips, she stating that she owned the wife of said negro man, and that she would give in exchange the two boys for the negro man and one hundred dollars; she urged, as an additional reason, that she owned no negro man, and that the family very much needed one, to cut and haul wood, and do other work which could not be done by women; that said Phillips asked her, if she had the authority to sell the negro boys, to which she replied that she had by her husband's will, and also that the negro man and the one hundred dollars was a full and fair consideration and more. Said White further stated, that her son Elbert and three of the daughters, minors, were present, all of whom requested the said Phillips to make the trade with their mother, stating before and at the trade that their mother was authorized to dispose of the said negro boys; that said trade was made at the special instance and request of the said Elizabeth

and family, and the negro man and the $100 delivered to her; that said man worked on the plantation of said Mrs. Gantt until 1833, when he was sold by said Elbert Gantt. And the defendant proved that the proceeds of the sale were received by Mrs. Gantt, and were used for the support and maintenance of her and the family.

Defendant proved, that Mrs. Gantt was the head of the family, and kept the same together as in the lifetime of her husband, the testator; that she managed and controlled the entire estate, both real and personal, sold land in Tennessee to pay a debt then due and owing by the testator, and also sold a negro man here for the same purpose; that she had paid all the debts of the estate; that in 1845 she removed to Louisiana, and died during that year, taking with her all the property except what her son Elbert had previously carried there, with her knowledge and consent, for the purpose of preparing a place for the reception of herself and family; that she had no property, nor means of support for herself and family, except what she derived from the estate.

The evidence tended to show, that neither the creditors nor the heirs ever raised or made any objection to the sole management and control thus exercised over the estate. All the children, legatees and distributees of said testator were of age sometime previous to the death of the said Elizabeth Gantt.— Four of them lived with her until her death. The children had no means of support, except from the estate aforesaid.

The defendant then introduced one Craig, who testified that, in the year 1828, he was elected clerk of the County Court of Dallas County, and when he came into office he found the documents and papers therein in great confusion, and many of the orders and adjudications unrecorded, and lying in bundles about in the office, in a careless and confused manner, and among the papers in this condition was the last will and testament of said Robert Gantt deceased, above mentioned, and also an appraisement and inventory of the estate of said deceased, and the probate thereof. Said Craig also stated, that he was employed by the County Court and Commissioners of said County to file properly and record in the books of the office all such papers as had not been recorded, and that the said appraisement was the identical paper recorded by him upon such employment; upon

which proof the defendant offered the said inventory and appraisement in evidence to the jury; to which the plaintiff objected: 1st. That it could not be admitted for any purpose, under the issue made by the pleadings in the cause; 2d. Because the paper was admitted 'to record without any authority, and because there was no order or judgment of the court, showing that letters testamentary or of administration had ever been granted before that time. The court allowed the paper to go to the jury for what it was worth, and the plaintiff excepted.— The inventory seems to have been proved by the appraisers in February, 1824. The plaintiff also objected to the declarations of Mrs. Gantt, and also to the declarations and acts of the legatees being received in evidence for any purpose; the court overruled the objection, and the plaintiff excepted.

The court, amongst other things, charged the jury, that the record of the appointment and qualification of the said Elizabeth Gantt, as executrix of the estate of Robert Gantt, in the Orphans' Court of Dallas County, was the highest and best evidence of her appointment, and that no other evidence could show the fact but the record itself or a transcript of it, if in existence. But the court charged the jury further, that, if the proof showed to their satisfaction that the appointment and qualification of said Elizabeth Gantt as executrix had been duly made by said Orphans' Court, and that in the lapse of time the papers and records of the appointment had been lost or destroyed, so that they were not now to be found, then they might find and conclude that she has been such executrix, without the production of the record or the transcript. To so much of this charge as relates to the secondary evidence aforesaid, the plaintiff excepted.

The court charged the jury, that, if the slave sued for was included in the devise to the said Elizabeth Gantt, and was a legacy to her for life, and remained over to the other legatees, if the legacy had vested in her according to the rules before explained, that at her death the legacy became the absolute property of those in remainder, and could not return to the estate, so as to authorize the plaintiff to recover it as the administrator of Robert Gantt's estate; to this charge the plaintiff excepted.

The plaintiff asked the court to charge the jury:

1. That plaintiff is entitled to recover the slave sued for, if he was the property of Robert Gantt deceased, when he died, there being no legal proof that defendant or any one else under whom he claims ever got any legal title to him whatever, and there being no legal proof of the appointment of a representative of the estate of the said Robert Gantt deceased, before the appointment of the plaintiff. This charge the court refused to give, and the plaintiff excepted.

2. That even if the records of the Probate Court did show that Elizabeth Gantt qualified as executrix of Robert Gantt, that is a matter which the jury ought not to consider, because there was no other issue in the case than the statute of limitations and *non detinet*. This the court also refused, and the plaintiff excepted.

3. That the life estate of the said Elizabeth Gantt, in the slave sued for, expired at her death, and the title to him is in plaintiff, unless the defendant shows that he was sold after the death of the said Robert Gantt by order of the Orphans' Court of Dallas County. This charge was also refused, and the plaintiff excepted.

The court, amongst others, gave two affirmative charges which were not excepted to, but which are necessary to be stated, as they are referred to in one that was excepted to. They were as follows : That an administration upon the estate of Robert Gantt, by order of the Probate Court of Dallas County, was absolutely necessary, and the assent of the executor or administrator appointed by the court was equally necessary to vest the legacy in said Elizabeth, devised and bequeathed to her in said last will and testament, and to separate it from the estate.

That they could not presume, or infer, or find that said Elizabeth Gantt, notwithstanding her appointment in the will, and her actings and doings with the estate, was the executrix of said estate, or had any power as such, unless they believed from the evidence that she had been legally appointed and qualified as executrix by the Orphans' Court of Dallas County ; and, unless she was so appointed and qualified, her legacy under the will could not vest in her, and the sale or exchange of the slave sued for, by her to Dr. Phillips, would be utterly illegal and void, and could not deprive the plaintiff of his full right to recover,

The plaintiff in error here assigns for error the matters contained in the bill of exceptions.

GEO. W. GAYLE and J. H. CAMPBELL, for plaintiff in error:

The matter most relied upon by the defendant in this case is, that presumption, which he insists arises from lapse of time, that an administration was granted on the estate of Robt. Gantt, or that letters testamentary had issued. It is not contended that this fact appears on the records of the Probate Court of Dallas County, but it is insisted that facts do exist from which the court is fully authorized and required to presume that such was the fact. As this is the chief question in the case, we will first examine it.

The first case to which we call attention is that of Thompson v. Miller, 2 Stew. 470. This case clearly shows, that matters of record cannot be supplied in any other manner than by the record itself. Wherever an amendment could not be made *nunc pro tunc*, the record cannot be supplied by presumption or intendment. It is clear that only clerical errors can be so amended, and not judicial errors or defects.—Wilkinson v. Goldthwaite, 1 Stew. & Porter 159.

It is insisted that the return of the appraisers of the property of Robert Gantt, appointed by the court, is sufficient to raise the presumption that letters testamentary or of administration had been granted. To show that this is a mistake, we refer to Moody v. Kenan, 9 Por. 257.

This return and appraisement was not recorded by order of the court, and therefore has not the force and effect of a judgment of the court, and could not, therefore, be received as evidence for any purpose.—Hall v. Hudson, admr., 20 Ala. 284; Hinson v. Wall, *ib*. 298.

In the case of Brown v. Bartlett, 2 Ala. 30, the court expressly say, that, where a fact does not appear of record, they cannot presume that such facts exists. Also, in the case of Binford v. Daniels, 13 Ala. 672, the court say: "It cannot be that the court, where there is no record evidence to amend by, can make the evidence which is to be the predicate of its subsequent action," &c. So, also, Waldo *et al.* v. Spencer, 4 Conn. 71, and other authorities referred to in Binford v. Daniels, *supra*. See, also, Bondurant, adm'r v. Thompson's Dist., 15 Ala. 203.

A record can only be amended by some matter of record.—Metcalf v. Metcalf, 19 Ala. 319. Can a record be presumed to exist, where there is nothing in the record which exists that would authorize an amendment.—See Hall, adm'r, v. Hudson, adm'r, 20 Ala. 284; Hinson v. Wall, 20 Ala. 298; Lee v. Houston, 20 Ala. 301.

These decisions have all been made upon 'the question of amendment, but it is presumed that the principle involved is the same in this case as in those.

In 1 Bouv. Bac. Ab. 259, it is said : " So, if the original or other part of the record be stolen, taken away, or avoided, or withdrawn by any clerk, though this be felony, yet this may be supplied and amended by other parts of the record: but if such part stolen, &c., or obliterated, cannot be supplied by the record, or any exemplification thereof, then it shall not be amended."—See Robinson v. Clifford, 2 Wash. C. C. Rep. 1.

Records, being things of the greatest dignity, can only be called in question by matters of equal notoriety with themselves. Wherefore, though the matters assigned for error (says Bacon) should be proved by witnesses of the best credit, yet the judges would not admit of it.—4 Bouv. Bac. Ab. 279. " Every question arising in a cause, concerning a matter of record, is to be tried by the record."—9 Bouv. Bac. Ab. 556, letter B. The whole of this section, and all the cases put, go clearly to show that no defect in the record can be supplied by any other evidence. What is not shown as part of the record, does not exist, and cannot be presumed to exist.

The records and written proceedings of courts of justice are the proper proof of the facts therein recorded, &c. ; in all which cases any evidence, direct or presumptive, deriving its force from the will, contract, &c., such as copies, extracts, or the recollections of witnesses, will be rejected as secondary."—Best on Presumptions, 45 Law Lib. 42 § 29. This is also the doctrine of the civil law.—1 Dom. Civil Law, Book 3 Tit. 6 § 2, Proofs and Presumptions, page 441, Folio ed. In Louisiana, it has been decided, " that the deposition of a witness is inadmissible to prove anything contrary to, or explanatory of, a judgment rendered in a suit between the same parties : aliter, to prove that one of the parties was in possession of a separate estate."—Skipwith v. Creditors, 19 La. Rep. 198.

Also, that parol evidence is inadmissable to show that a judgment was not pronounced on a particular day.—Nolan v. Babin, 12 Rob. Rep. 531. Also, "that a probate judge, by whom the bond of an administratrix was accepted, and letters of administration granted, cannot be heard as a witness, to prove that one of the parties by whom the bond was signed executed it on the express condition that other persons who never signed it should become co-sureties with him ; nor can any other person be received as a witness to establish such fact."—Taylor v. Jones, 3 An. La. Rep. 619 ; see, also, Broussard v. Burnard, 7 La. Rep. 216. " Where the question was, whether particular persons were parties to certain probate proceedings, held that the best evidence of the fact was the record itself."—Williams v. Duer, 14 La. Rep. 523.

It is admitted that, if it was shown affirmatively that the record here relied upon, or rather presumed, could be shown ever to have existed, and its loss or destruction could be shown, then secondary evidence might be resorted to ; but not otherwise.—Childress v. Allen, 17 La. Rep. 37 ; 3 Robinson's La. Rep. 33 ; Beard v. Moraney, 3 ib. 119.

" The testimony of a judge of probate, in whose office a will should have been deposited, that he had seen the will in his office, but had searched for it in vain, cannot authorize the introduction of parol evidence of its contents, and of its having been proved and ordered to be executed, where the minutes of the probate court are not introduced, nor alleged to have been lost, mislaid or destroyed ; such evidence, though admitted without objection, would be insufficient to establish the will."—Dash v. Dosson, 6 Rob. Rep. 11; see, also, Jones v. Hunter, 6 Rob. 235 ; Lockhart v. Jones, 9 Rob. Rep. 381; Chappin v. Michael, 11 Rob. Rep. 233.

" Parol evidence is inadmissible to prove the appointment of a curator to a succession, unless it be first shown that the record of his appointment has been lost.—Rouley v. Berand, 11 Rob. Rep. 478.

" In consequence of the notorious want of care in the preservation of the public records in the county parishes, the absence of such record evidence, when applied to ancient proceedings, raise but a remote presumption, and one which must be held subordinate to the violent legal presumption, that the judge before

whom the proceedings were had did his duty."—Gentile v. Foley, 3 An. La. Rep. 146.

So, though "a transcript of judicial proceedings show that a *fi. fa.* was issued against a party, the existence of a judgment will not be inferred."—Pickett v. Bates, 3 An. La. Rep. 627; Thompson v. Chaureau, 6 N. S. La. Rep. 462; Cassanora v. Agro, 3 La. Rep. 212; Thompson v. Rodgers, 4 La. Rep. 12.

Upon questions of this character it is submitted, that the decisions of the courts of Louisiana are of just as high authority as those of any other State, for the reason that their rules of evidence are all drawn from the common law.

The law will presume that all persons upon whom duties have been imposed have duly discharged them, and hence the judgments of the courts of competent jurisdiction are presumed to be well founded and their records to be correctly made.—Best on Presumptions, 45 Law Lib. 59; 1 Starkie on Evidence 253.

It is a principle of law, that irregularity will not be presumed. Best on Presumptions, 45 Law Lib. 64; 3 Mees. & Wels. 65.

In 19 Conn. 489 it is said: "The records of a court of competent jurisdiction import verity, and cannot be contradicted. Therefore, where the record of a justice of the peace, in a criminal proceeding of which he had cognizance, stated that the defendant was called and made default of appearance, and the defendant in a subsequent suit offered testimony to prove that he in fact appeared at the time and place appointed, and then temporarily withdrew by the permission and at the request of the justice, it was held that such testimony was not admissible.— See, also, Hard v. Shipman, 6 Barb. Sup. Ct. Rep. 621; Littleton v. Christy, 11 Miss. Rep. 390.

The following case is referred to, as being in point in two aspects of this case: 1st, as showing that the recording of the appraisement by Roberts, the deputy clerk, without the order of the court, gave it no validity; 2d, that the record is obliged to be taken as it appears, without change. Where it appeared from the docket of the clerk of the court, that a party with his surety entered into a recognizance to prosecute an appeal from a judgment of the District Court to the supreme judicial court, and the clerk died before the recognizance was extended on the books of record, it was held that, although the subsequent clerk might, by direction of the court, complete the imperfect record

of the deceased clerk, yet the new clerk had no authority to do it without such directions, and the minutes or short notes of the clerk upon the docket must stand as the record, until a more extended and intelligible record should be made up therefrom."— Maine (14 Shep.) 179.

More direct and positive, however, to the first point is the case of Bank v. Donaldson, 6 Barr's Rep. 179. The statement is thus made: " The mere fact that a paper is found in a bundle of papers, in a case in the clerk's office, is not sufficient to make it an office paper, and admissible as evidence."—2 An. Sup. U. S. Dig. 164, § 34. See, also, Struther v. Reese, 4 Barr's Rep. 129.

" The records of a court cannot be explained by parol testimony.—3 Dev. Rep. 423. When the records are made up, no power but that of the court itself can touch them to alter them."— 4 Iredell's Rep. 534; 2 Sup. U. S. Dig. p. 689, §§ 48, 55; 2 Eng. Com. L. Rep. 348; 14 ib. 265; 17 ib. 177.

For the purpose of showing the strictness with which record evidence is regarded, we refer to Rex v. Bellamy, 21 Eng. Com. L. Rep. 406.

It has also been held in Virginia, Buford v. Buford, 4 Munford's Rep. 241, that the only competent evidence that an award, made *pendente lite*, was afterwards set aside on exceptions taken, is a transcript of the record thereof duly authenticated."

We call attention particularly to the case of Bohn v. Sheppard, 4 Munf. Rep. 403. On the question now under discussion, the court say : " Although, in controversies concerning wills, roads, the probate of wills, and granting of administrations, the superior court of law, to which an appeal is taken from the county or corporation court, may hear new evidence upon questions submittted to its revisal on the record, it ought not to receive any evidence but that of the record itself, to prove what questions were in fact tried in the court below."

The point upon which the defendants below mainly rely is upon lapse of time, from which they say the court must presume the grant of an administration. It might be a sufficient reply to this, to say that they were chargeable with notice of the character of the title they took. The will had been admitted to probate, and was spread upon the records.

But we state it as a general rule, that presumptions cannot

be indulged against the heir, and as it is shown by the record that there are no debts here to be settled, the suit is for the benefit of the heirs. To this point, see Best on Presumptions, 45 Law Lib. p. 101 § 112; Doe *ex dem.* Graham v. Scott; 11 East 478, marg. 479. In the case of Doe *ex dem.* Fenwick v. Reed, 7 Eng. Com. L. Rep. 79, Abbot C. J. says, that these presumptions or grants have already gone too far. To this we refer as a strong case, in our favor.

The case of the Heirs of Bishop v. Hampton, 15 Ala. 768, is clear and explicit, that the record cannot be supplied by parol. To the same effect is Bishop's Heirs v. Hampton, 19 Ala. 797.

WM. M. MURPHY, *contra:*

In Maine, in the case of Battles v. Holley, 6 Greenl. R. 145, in the case of real estate, after a lapse of thirty years, the authority and qualifications of an administrator were presumed, from the existence of an inventory and a schedule of claims in the probate office, attested by his oath, &c.; the probate records and files of that period appearing to have been loosely kept, and no other vestige of his appointment being discoverable. The court say, on page 147: "We entertain no doubt that the jury were well justified in presuming that the administrator was duly appointed and qualified." The judge in the court below, after summing up the facts, charged the jury, "they would be justified in presuming the regularity of his appointment and qualifications;" this charge was affirmed. It will be remembered that this record shows that Craig was employed to arrange the papers and record them in the office of the Orphans' Court of Dallas County, in 1828; that he found this will and inventory and appraisement, not recorded; and that all the papers in the office were in great confusion, no record made of them, no file, and no order preserved; and that he, in 1828, five years after probate, recorded this will and inventory and appraisement.

In Thomas *et al.* v. Hatch, 3 Sumner 179, Judge Story says, in reply to the argument that no commission was produced from the probate court of the guardianship of a *non compos mentis:* "It is true that no commission is produced or can now be found on the probate records. But other papers are produced," (an inventory of the estate, and account settled and allowed.) "Un-

der such circumstances, there is certainly strong *prima facie* evidence, after such a lapse of time, to supply the direct proof of a probate appointment, and we all know how loosely, in those times, the records of the courts of probate were kept."

In South Carolina, in Sims v. Aughtery, 4 Strobh. Eq. 117, 118, after a possession of twenty-five years of slaves, the court say : " The court will presume a sale by the executor, for the payment of debts, an administration *de bonis non*, a sale by such administrator, or almost anything else, in order to quiet the long possession. This is strong language, but not stronger than is warranted by the authorities."

In Massachusetts, in the case of Gray v. Gardner, 3 Mass. 399, the judge in the trial below instructed the jury " that they might lawfully presume that the administrator had in fact pub-lished the advertisements, and taken the oath required by the statute previous to the sale; the length of the time after the sale, &c.; and that the probate records are now incomplete." The Supreme Court of Massachusetts, on page 402 of this opinion, use these words : " The court are satisfied that the judge's direction to the jury was correct, and that the jury made a fair and legal presumption. This was a case of the sale of lands by an administrator, and twenty years acquiescence, &c. In the case last cited, it was in evidence that the probate office had been kept in a loose and careless manner.

In Mississippi, in the case of Stevenson's Heirs v. McReary, 12 Sm. & Mar. 11, the same point of presumption was established, where it was shown that, " at the time, the officers who had charge of the records of the probate court were negligent in the discharge of their duties ; and such proof is legal, to show the probability of the loss of the record." In this case, many of the American authorities are cited and examined,—among them a strong case of presumption from lapse of time from Vermont.—Hazard v. Martin, 2 Verm. 84 ; Beall v. Lynn, 6 Har. & Johns. 361 ; 6 Martin's (La.) Rep. 153, N. S. Many cases are also cited from New York, on page 50.

In Best on Presumptions, 98 to 100, §§ 109, 111, 47 Law Lib., it is said : " It is difficult to contend that there can be any matter of fact which a jury may not presume from possession and circumstances, when that possession and those circumstances are sufficiently strong to convince them of its existence."

"Lawful executorship will be presumed from lapse of time." In the case of The King v. The Inhabitants of Barnsley, 1 M. & Sel. 377, an executorship was presumed after lapse of time.

2. The jury had a right to determine the question presented in this record.—See 1 Greenl. on Ev. 53, § 48; also § 47, p. 52. Speaking of presumptions falling within the "exclusive province of the jury, he uses these words: "They are usually aided in their labors by the advice and instructions of the judge, more or less strongly urged at his discretion; but the whole matter is free before them, unembarrassed by any considerations of policy or convenience, and unlimited by any boundaries but those of truth, to be decided by themselves according to the convictions of their own understanding." In 3 Bacon's Abr. 618, (H,) of Presumptive Proof, it is said: "Presumptions of law and fact are such artificial presumptions as are recognized and warranted by law as the proper inferences to be made by juries under particular circumstances."

In Alabama, in Rhodes' Ex'rs v. Turner & Wife, 21 Ala. 210, this court have decided, if the parties allow twenty years to elapse without calling an executor to a settlement, the presumption of payment arises in his favor. This is the only case I can find of our decisions, upon the effect of the lapse of time.

Under the influence of these decisions as to the effect of lapse of time, long acquiescence, fair and *bona fide* sale, full consideration, the probate of the will, the return of inventory and appraisement, the loose and careless manner in which the records of the probate court were kept, as shown by the testimony of Craig, the payment of the debts of the estate, the sale of real and personal estate in conformity to the will, the education and support of the children, the keeping of the estate together, the fact that she was sole executrix,—take all these facts, and then refer to all the charges of the court, and the charges will be sustained. All the facts did create such a presumption as should have been left to the consideration of the jury.

3. If, then, this presumption was a matter of fact for the jury, then this plaintiff has no right of action, as the record shows the assent of the executrix to the legacy in the will. She being a legatee for life, with remainder to her children, vested the estate in them as remainder at her death, and not in this administrator. To this point authority is unnecessary. An

executor's assent to the particular estate in chattels or slaves will be deemed sufficient assent to the remainder.—Adie v. Cornwall, 3 Monroe 283 ; 2 J. J. Marsh. 494 ; 2 Williams on Ex'rs, top p. 985.

4. As to assent to legacy, see 2 Williams on Ex'rs 850 ; 2 Lomax on Ex'rs 132-3.

5. It will be particularly observed, that the plaintiff moved to exclude from the jury the declarations and acts of Mrs. Gantt and the distributees, and then introduced, as his own evidence, the answer in chancery of Wm. S. Phillips, the defendant, in which the court will find all these declarations and acts fully detailed, and which are the same plaintiff moves to exclude.

6. The plaintiff introduced the will, and then moved to exclude the inventory. The judge permitted it to go to the jury for what it was worth as a circumstance. By reference to the record, the court will find the inventory and appraisement sworn to by the appraisers before the judge of the County Court, as " all the personal estate shown to them by the executrix of the last will and testament of the said deceased." Thus in the affidavit prepared by the judge, he recognized and named her as the lawful executrix, &c.

7. It will be unnecessary to review the charges asked and refused. If this court should determine the facts of presumption were properly left to the jury, the fourth charge asked and refused was properly refused. If the executrix took the precedent estate, with assent to the legacy, the remainder-man can sue upon the termination of her particular estate, and this plaintiff, as administrator, has no right. An assent once given cannot be retracted.—Williams on Ex'rs, top p. 986. There is no pretence that this assent was ever retracted ; on the contrary, the record shows that she had the estate in her possession twenty-two years, and at the time of her death.

GIBBONS, J.—The court, after charging the jury that the record was the best and only evidence of the appointment of Elizabeth Gantt to the office of executrix of Robert Gantt, deceased, and of her qualification therein, if said record was in existence, further charged as follows : " Yet, if the jury are satisfied from the proof, that she had been appointed, and had qualified as aforesaid, and that, by the lapse of time, the papers

and records of the appointment had been lost or destroyed, so
that they were not now to be found, then they might find and
conclude that she had been such executrix, without the produc-
tion of the record or the transcript." This presents the main
question in the cause.

We regard this language as tantamount to saying to the jury
that they might, if they chose, from the proof before them,
after such lapse of time, presume the appointment and qualifi-
cation of Elizabeth Gantt as the executrix of the last will and
testament of Robert Gantt, deceased. The authorities are very
numerous, and particularly in this court, that a record cannot
be amended, except by the record.—Thompson v. Miller, 2
Stew. 470 ; 1 Stew. & Porter 159 ; Moody v. Kenan, 9 Por-
ter 257. Nor is it competent, as a general rule, to enlarge a
record by parol proof.—Brown v. Bartlett, 2 Ala. 30 ; Binford
v. Daniels, 13 Ala 672; Bondurant, adm'r, v. Thompson's Dis-
tributees, 15 Ala. 202 ; and to the same effect are numerous
other decisions of this court. Neither can parol proof be re-
ceived to contradict or vary a record.—Bishop's Heirs v. Hamp-
ton, 15 Ala. 761. These principles are all conceded, and yet
it is believed that none of them come up to the case presented
in the charge of the court, as the effect of the lapse of time, in
the cases above cited, forms no element. This, it is believed,
is of itself sufficient to distinguish the case at bar from the
above cited authorities.

Of the effect of the lapse of time, in support of possession,
Mr. Best remarks : " There is hardly a species of act or doc-
ument, public or private, that will not be presumed in support
of possession. Even acts of parliament may be thus presumed,
as also will grants from the crown, letters patent, writs of *ad
quod damnum*, and inquisitions thereon, by-laws of corporations,
fines and recoveries, the enfranchisement of copy-holds, endow-
ment of vicarages, exemption from tithes, consent of ordinary
to composition deeds, &c. So, likewise, the disseverance of
tithes by the requisite parties, previous to the restraining stat-
utes, copy-hold customs, admittance to and surrender of copy-
holds, and lawful executorship, will be presumed from lapse of
time."—Best on Presumptions 98 § 109.

In the case of Rex v. The Inhabitants of Barnsley, 1 M. &
Sel. 377, the facts bear some analogy to the case at bar. The

question was, whether a certain pauper and his family had a residence in a certain town or not; and this depended upon another fact, to-wit: whether the assignment made by a certain woman, of articles of apprenticeship of the father of the pauper, was made as executrix of her husband, or simply in her individual capacity. John Gill, the father of the pauper, was bound an apprentice to Thomas Harrison, of the township of Clint, for seven years. He served five years of his time, when Harrison, the master, died. His wife, Elizabeth Harrison, in 1769, assigned the articles to Wm. Bradfield, calling the apprentice her apprentice, which she assigned to the said Bradfield for the remainder of the term. The apprentice went with the said Bradfield, and served the remaining two years. It was conceded that the validity of this assignment would fix the residence of the pauper, and the validity of the assignment depended upon the fact whether or not Elizabeth Harrison was or was not the executrix of her husband. The question arose after the lapse of about forty years; and Lord Ellenborough remarked: "The assignment (which it is admitted was not at the time required to be stamped) is in its form an assignment by the widow as *my apprentice;* and, at this distance of time, we will presume, if necessary, that she was lawful executrix."

In this country, courts have gone very far in the same direction.

In Battles v. Holley, 6 Greenl. 145, "after the lapse of thirty years, the authority and qualification of an administrator were presumed from the existence of an inventory and a schedule of claims in the probate office, attested by his oath, and a petition preferred by him to the Court of *Common Pleas* for license to sell the real estate of his intestate, with the original certificate of the judge of probate thereon, recognizing him as an administrator, the probate records and files of that period appearing to have been loosely kept, and no other vestige of his appointment being discovered." The presiding judge in this case uses the following language: "The authorities cited for the tenant present cases in which presumptions similar in principle have been held to be warranted and sustained. Public documents may be lost, or destroyed by inevitable accident, or by the negligence of those who are charged with their custody; but rights depending on them, long enjoyed, are not therefore to be de-

feated. Every fair presumption, arising from such enjoyment and other existing evidence, may and ought to be deduced, by which such rights may be upheld. A failure of proof in a recent transaction is not entitled to the same indulgence. It warrants rather the inference that what is not proved never existed."

Again, say the court in the same case : "We entertain no doubt that the jury were well justified in presuming that the administrator was duly appointed and qualified." The judge at *nisi prius* told the jury that they would be justified in presuming the regularity of the appointment and qualification of the administrator ; and this charge was affirmed by the appellate court.

In Thomas *et al.* v. Hatch, 3 Sumner 179, is found the following head note : " Papers from the probate records, showing that a person was treated by the probate court as the lawful guardian of a *non compos*, will be received as *prima facie* evidence, after a long lapse of time, to supply the direct proof of a probate appointment." "*It is true* (says Judge Story) that no commission is produced, or can now be found on the probate records; but other papers are produced from the probate records, which show that he was treated by the probate court as the lawful and regular guardian. Thus the court received an inventory of the estate of the *non compos* from him as guardian in 1792, and as long ago as 1808 it settled and allowed an account with him as guardian. Under such circumstances, there is certainly strong *prima facie* evidence, after such a lapse of time, to supply the direct proof of a probate appointment, and we all know how loosely in those times the records of the court of probate were in many cases kept."

In Sims v. Aughtery, 4 Strob. Equity R. 103, the court uses the following language : " After a possession of twenty-five years, the court will presume a sale by the executor for the payment of debts, an administration *de bonis non* after Lyles' death, a sale by such administrator, or almost anything else, in order to quiet the long possession. This is strong language, but not stronger than is warranted by the authorities, or demanded by a stern and imperative public policy."

Gray v. Gardner, 3 Mass. 399, was a real action by the plaintiff, as heir of his father, against the person in possession of

the property. The defence was, that the administrator of the estate had sold the lands by order of the court, and the tenant in possession defended on this title. The heir had acquiesced in the sale for twenty years, but the defendant could show in evidence only the order for the sale and the sale in fact, without being able to show several other statutory requisitions in such sales. The court trying the cause at *nisi prius* instructed the jury, in effect, that they might, if they chose, from the evidence before them, after that lapse of time presume the deed made by the administrator, and his proceedings at the sale, regular ; and the Supreme Court, upon that point, say : " The court are satisfied that the judge's direction to the jury was correct, and that the jury made a fair and legal presumption." It will be observed in this case, also, it was shown that the records of the probate office were at the time loosely kept.

In Stevenson's Heirs v. McReary, 12 Sm. & Mar. 9, which was an action of ejectment for the recovery of lands, will be found the following head note : " While the rule is well settled, that the probate courts cannot order a sale, unless every thing necessary to give them jurisdiction of the person and of the subject matter appears upon the records ; yet, when an administrator made a sale of real estate of his intestate, gave the purchasers a deed, in which he recited that the steps required by law had been taken, and placed the purchaser in possession ; and thirty four years afterwards, the heirs of the intestate brought an action of ejectment for the land ; held, that the court would presume from the lapse of time, and the defendant's undisturbed possession, that the administrator had complied with the requisites of the law, though in some particulars the records of the probate court did not show that he had done so; and this presumption will prevail, unless it can be shown affirmatively that the administrator did not sell according to law ; upon proof of which, the presumption would yield ;" and further, " that such a presumption is strengthened, by the proof that the sale took place in the infancy of the government, and that the officers, who at the time and subsequently had charge of the records of the probate court, were careless and negligent in the discharge of their duties ; and such proof is legal, to show the possibility of the loss of the record."

These authorities are certainly persuasive to show that, under

some circumstances, juries may be allowed, from lapse of time, to presume facts, in reference to records, which the record itself does not show. The question then arises, whether the evidence in the present case authorized the instruction. The facts before the court were, the will of the testator, bearing date in 1818, and probated in 1823; an inventory of the estate, purporting on its face to have been made under the authority and sanction of the court ; the appointment of the said Elizabeth Gantt as executrix by the testator; her acting as such from the death of her husband until her own death ; her paying the debts of the estate, keeping the property of the estate together as was directed by the will, and exercising ownership and control over it ; her acts and deeds in reference to the property being acquiesced in by the heirs, from the time that she first assumed the management and control of the property, in 1823, until 1845 or 1846, when she died ; the acquiescence of the heirs in the defendant's possession of the slave in question, and in the possession of the father of the defendant, from the year 1841 or 1842 until 1851, when suit was brought, about twenty years ; a *bona fide* exchange of property and consideration given, with the additional fact that the records of the probate office of Dallas County were loosely kept for a series of years about the time the will was probated : all these facts taken together, in our opinion, make a case well warranting the instruction of the court. Under the circumstances, we consider the court left the question to the jury quite as favorably as the plaintiff was authorized to demand, inasmuch as the jury are told, "if they are satisfied from the proof that the appointment and qualification of the said Elizabeth Gantt as executrix had been duly made by said Orphans' Court, and that in the lapse of time the papers and records of the appointment had been lost or destroyed, so that they could not now be found, then they might find and conclude that she had been such executrix, without the production of the record or transcript." In our opinion, the testimony fully authorized this instruction, and the plaintiff has no reason to complain of the manner in which the question is left to the jury. There was, therefore, no error in this instruction of the court. In the case of Rhodes, ex'r, v. Turner & Wife, 21 Ala. 210, where parties had allowed twenty years to elapse without calling the executor to account, it was held, that the lapse of that time

warranted the presumption of payment in favor of the executor. This is only applying the same principle to a different subject. To the same effect is the case of Barnett v. Tarrence, at the present term of this court.

It needs no argument to prove that, if the said Elizabeth Gantt took out letters testamentary, and as the executrix of the estate took possession of the property, and had an inventory returned to the court, the legacy of her life estate thereby vested, unless she expressly dissented from the will. Indeed, her assent to the provisions of the will, under the circumstances, will be presumed, until the contrary is made to appear; and her legacy thereby becoming vested, the remainder over after her life estate became by the same act vested in the other legatees named in the will, and could not by the death of the said Elizabeth revert to the estate of the said Robert Gantt. This shows the correctness of the other affirmative charge excepted to by the plaintiff in error.

The principles of these two charges being thus settled, it follows as a necessary consequence, that court the committed no error in refusing the charges prayed, as the principles involved in these charges are the converse of those already discussed.

The only remaining matter of error, not covered by what has already been said, is the admission of testimony objected to by the plaintiff below. This was the inventory and appraisement, accompanied by the testimony of Craig, the acts and declarations of Elizabeth Gantt and the other legatees under the will and distributees of the estate. All this testimony we consider legitimate, as forming a predicate for the court to leave to the jury, after the lapse of time shown to have existed, the power of presuming, if they thought proper, the legal appointment and qualification of the said Elizabeth Gantt as executrix of the last will and testament of Robert Gantt, deceased.

We find no error in the record, and the judgment is affirmed.