WALKER, EXECUTRIX, *vs.* WALKER'S DISTRIBUTEES.

1. The assent of an executrix to a specific legacy to herself of a life estate in two slaves, will be presumed, when the facts are, that she is the widow of the testator ; that she did not dissent from the will, although it would have been greatly to her pecuniary advantage to do so ; that she promptly qualified as executrix, and kept the estate together (under the will) for three years, for the purpose of raising and educating the children ; that in the meantime, by her industry, economy, and prudent management of the estate, she totally exonerated it from all indebtedness ; and that she ceased to be executrix after all the debts were paid, and claimed a credit on final settlement of her administration for services rendered by said slaves to the estate after the testator's death.

2. In such case, her assent, though not given until all the debts of the estate were paid, or even until the day before she ceased to be executrix, relates back to the testator's death, and she is entitled to a credit for the value of the services of the slaves to the estate, as proved, from the testator's death.

3. An executrix held entitled to a credit, on final settlement, for lawful jail fees paid by her to regain the possession of certain slaves belonging to the estate, who had been taken up and committed to jail as runaways, when the evidence showed the following facts: That the executrix was the widow of the testator, and no other person than herself and her children was interested in the estate; that the estate was kept together under the will, and the plantation kept up and cultivated; that the overseer employed by her was cruel and severe towards the slaves, and several of them had previously run away on account of his cruelty, and had been taken up and committed to jail, "for which and other jail fees allowance had been made"; that said overseer made good crops, but was finally discharged by the executrix, in the fall of the same year, on account of his severity to the slaves.

APPEAL from the Court of Probate of Macon.

In the matter of the estate of Edwin C. Walker, deceased, on the application of his executrix for a final settlement of her administration.

The testator died in September, 1847, after having executed his last will and testament, in which he appointed his wife his executrix, and which contains the following clauses:

"Item 1. After all my just debts are paid, it is my will and desire, that the remainder of my property, both real and personal, shall be kept together for the benefit of raising and educating my children, and remain so until my wife Julia Ann does marry, or either of my daughters does marry or become of age. In case there should be a division, by marriage or otherwise, it is my will and desire, that the younger children's part of my estate should be kept together as a joint property for their benefit. Should I not purchase a farm before my death, it is my will and desire, that my executrix or administrator should purchase a farm, sufficient to work my hands, out of any moneys that may belong to my estate; and the remainder and overplus, after the support of my family, to be expended for negroes, or any other property, for the benefit of said joint estate, or of the children's estate, as the case may be.

"Item 2. It is my will and desire, that Thomas P. and William S. Miller shall have, out of the joint funds of my

estate, one thousand dollars each, to be given to them by my executrix, &c.; to be paid to them at the time they may become of twenty-one, discretionary with my executrix, or at the age of twenty-five, of each legatee mentioned in this item.

"Item 3. It is my will and desire, that my wife Julia Ann shall have, during her lifetime, negro man Arnold, about forty-five years old, and his wife Hannah, about thirty-five years old, and an equal distributive share of the remainder of my estate, both real and personal, with my children, during her lifetime, and at her death to be divided equally among my surviving children.

"Item 4. It is my will and desire, that the remainder of my estate be divided equally among my children, as specified in the second item ; my daughters' part to be settled on them, during their lifetime, for the benefit of them and their heirs, in the hands of some qualified trustee, for their use alone. In case either of my daughters die without lawful issue, then their portion (shall?) be equally (divided?) between my surviving children.

"Item 5. Whenever a division may take place of my estate, it is my will and desire, that the lands shall be valued, and the amount of the legatee's or legatees' part to be paid to them out of moneys arising from the younger legatees' joint estate, if it can be done without sacrificing or selling their negroes."

This will was attested by only two witnesses, and was admitted to probate on the 14th September, 1847. The widow qualified as executrix on the 18th October, 1847, and had charge of the estate from that time until some time in 1852 (the record does not state the precise time.) On the final settlement of her administration, at the June term, 1853, she claimed a credit of $750 for services rendered to the estate by the said slaves Arnold and Hannah ; and presented three vouchers for money paid to one W. F. Wade, amounting to $34 50, jail fees for runaway negroes belonging to the estate. The evidence in relation to each one of these items is stated at sufficient length in the opinion of the court, and for that reason it is omitted in this place. The court refused to allow any one of these credits, and the executrix excepted to each refusal ; and these rulings of the court are now assigned for error.

GEO. W. GUNN, for the appellant :

From the provision contained in the third item of the will, no doubt can be entertained as to when the right and enjoyment vested : it is evident that the testator intended to confer upon his wife, during her life, the slaves named, over and above what each one of his children should take, and that the same should vest in her at his death ; and such being his intention, the same should prevail. When a legacy is given generally, without appointing the time for its enjoyment, it vests immediately upon the testator's death.—Frierson v. Frierson, 21 Ala. 549 ; Capal's Heirs v. McMillan, 8 Port. 197; Hunter v. Green, 22 Ala. 336.

It is insisted, however, that the second clause requires the estate to be kept together, and that, giving effect to the whole will, the widow is not entitled to the enjoyment of the services of these slaves until a distribution shall have been had under the provisions of this second item. If there is any conflict or repugnancy in the will, it will be found in these two provisions ; and if such repugnancy exists, the latter clause must prevail.—1 Jarm. on Wills, pp. 393 to 403; 22 Ala. 336; 5 ib. 143; 2 Stew. 170. But, since the law requires all the provisions of the will to be reconciled, if possible, the question arises, whether or not these two clauses can be reconciled with each other, and with the other provisions of the will. For the appellant it is contended, that this may be done, by decreeing to the widow the present enjoyment of these two slaves, and allowing hire for their services. A different construction would defeat the testator's evident intention to give the widow the additional advantage of the services of the slaves over and above each of his children. To say that the use of the property, with the right, did not vest in her until a distribution of the estate, would not only sacrifice the third clause to the second, but would sacrifice the specific bequest in the third clause to the general bequest in the second ; and this is not allowable.—21 Ala. 549; 5 ib. 143. The provisions of this will differ from that in the case of McLeod v. McDonnell, 6 Ala. 236, and more nearly resemble that in Frierson v. Frierson, 21 Ala. 549.

If this construction be the correct one, there can be no doubt, under the facts disclosed by the record, of the error in the

refusal of the court to allow the widow credit for the services of the slaves. The proof is, that they were profitably employed in the service of the estate, and that their services were worth to the estate $250 *per annum;* and further, that she acted in good faith, and freed the estate, partly by the services of these slaves, of large and heavy debts then hanging over it.

The court erred, also, in refusing to allow the appellant credits for the three vouchers paid to W. F. Wade. The proof shows, that she acted in good faith ; that by means of her industry, economy, and prudent management, she relieved the estate from the embarrassment in which the testator left it ; that she discharged the overseer because of his cruelty to the slaves ; and it fails to show that she had notice of his cruelty until after the demands in question became a charge against the estate. It was necessary for her to pay these demands, in order to get possession of the slaves taken up ; and there can be no justice in requiring her to pay them out of her own funds. All reasonable and proper allowances should be made in favor of an executrix thus circumstanced.—Pinckard's Distributees v. Pinckard's Adm'rs, 24 Ala. 250; Moore's Executors v. Moore's Distributees, 18 *ib.* 242.

CLOPTON & LIGON, *contra:*

The appellant being both executrix and legatee, her possession of the negroes during her administration of the estate will be referred to her right as an executrix, and not as legatee, unless she has done some act equivalent to an assent to the legacy ; and, if her acts are equally applicable to her character as executrix, as to her title of legatee, they will not constitute an implied assent.—2 Lomax on Ex'rs, p. 133. The estate is shown to have been in debt ; and whilst the bill of exceptions states that she has freed it from debt, yet it does not state the time when these debts were paid. From the account current of the executrix set out in the record, we discover that she was paying debts as late as August, 1852. She would certainly be considered as holding the negroes in her right as executrix so long as there were debts unpaid. Whilst she held them as executrix, the estate would be entitled to the proceeds of their labor : she would not be permitted to

take these proceeds, until she elected to take them as a legatee. For these reasons, the allowance asked for the hire of said negroes ought to have been refused.

If, however, the above conclusion is not correct, the allowance was properly refused, for another reason : The allowance was asked for the sum of $750, the full value of their hire from the time she took charge of the estate as executrix until the time of her final settlement ; and she was certainly not entitled to hire for the first eighteen months. The statute giving to a legatee the right to sue for his legacy, at common law, limited that right to the expiration of eighteen months from the probate of the will. Having no right to sue for it, or, by parity of reasoning, no right to take the negroes as a legatee, she has no right to their hire during that period.

But, if the judge below was wrong in the reasons and principles upon which he refused the allowance, the result which he attained was nevertheless correct, and the executrix was not entitled to an allowance for the hire of the negroes, for the reason, that, upon a proper construction of the will, said negroes were to be kept together with the balance of the estate, until the period for a division fixed in the will had arrived. Every attempt will be made to give the whole will such a construction as will render each part of it effectual ; and, in the attainment of this object, the local order of the limitations is disregarded, if it be possible by a transposition of them to deduce a consistent disposition from the entire will. 1 Jarm. on Wills, pp. 415-16; Walker v. Walker, 17 Ala. 399; Stallsworth v. Stallsworth, 5 ib. 146; 2 Paige 122. The general intent, although first expressed, will overrule the particular. This is now well established.—1 Jarm., p. 411, note, and cases cited ; 2 Williams on Ex'rs 714; 11 Gill & J. 206.

Applying these principles to the construction of this will, it seems evident, the intention of the testator was that these two negroes should remain and be kept with the residue of his estate, for the benefit of raising and educating his children, until his widow married, or either of his daughters married or became of age, when a division was to take place. What was the general intent of the testator, as ascertained from a construction of his whole will so as to make one part harmonize with the others? In the first clause of

his will, he provides for keeping his estate together, after paying his debts. When, however, his widow married, or either of his daughters married or became of age, his estate was to be divided; and, in the third and fourth clauses, his object was, to arrange the manner in which that division was to be made—that is, Arnold and Hannah were to be taken out of the estate, and then the remainder to be equally divided between his widow and children. This manner of a division is provided for in two separate clauses, because he intended his widow to have only a lifetime estate in her portion. This construction is further supported by the fact, that, in the same clause in which he gives his widow Arnold and Hannah, he also gives her an equal distributive share in the remainder of his estate. The construction which gives her a right to the possession of Arnold and Hannah immediately upon the probate of the will, or earlier than the period fixed in the will for a division, will also give her a right to the same possession of an equal distributive share in the residue of his estate, and thus defeat the object of the testator to keep his estate together.

The other allowances, asked by the executrix for payments made to W. F. Wade for apprehending and committing runaway slaves, were properly refused, for the reason, that these slaves ran away on account of the cruel treatment of an overseer, who was retained by the executrix; and that, too, after she had been compelled to pay other fees of a similar kind in a previous year, (which had been allowed her in former annual settlements,) and which were also caused by the cruel treatment of the same overseer. These expenses were incurred by the improper and cruel treatment of her own agent, and by her disregard of her duty to protect said property.

RICE, J.—The bequest of the two slaves Arnold and Hannah, contained in the will of Edwin C. Walker, to his wife during her lifetime, is a specific legacy. Upon the evidence set forth in the record, the court below decided, that she was "entitled under the will to the possession and services of said two slaves, but as she had permitted them to remain in the service of said estate, of which she was possessed as executrix, and not having signified her assent in any manner

to take them as a legatee, she was not entitled to an allowance for their services." It becomes our duty to inquire whether this decision is correct.

We admit, that the assent of an executor is as necessary to a legacy bequeathed to himself, as to a legacy bequeathed to any other person ; but this rests on the principle, that until he has examined the state of the assets, he is incompetent to decide whether they will admit of his taking the thing bequeathed as a legacy, and whether it must not of necessity be applied in satisfaction of debts.—2 Williams on Ex'rs 850. It is *as a protection to the executor*, that his assent to a legacy is required by law.—*Ib.* 843, 844.

His assent may be either express or implied. When the legacy is to himself, he may not only in positive terms announce his election to take it as a bequest, but such election may also be implied from his language or his conduct.—2 Williams on Ex'rs 850, 846. Any expression or act of the executor, which shows his concurrence to the thing bequeathed, will amount to an assent.—4 Bacon's Abr. 112. A small matter will amount to an assent—an assent being but a rightful act ; especially where the estate is clearly solvent, and there is no probability that the legacy will be needed to pay the debts of the estate.—6 *Ib.* 331.

In certain cases, the assent of the executor may be presumed, upon the principle that, in the absence of evidence, the executor shall be taken to have acted in conformity with his duty; as when an executor *dies after the debts are paid*, but before the legacies are satisfied. So, the assent of an executor may be concluded from the legatee's possessing himself of the subject bequeathed, and retaining it for some considerable time without complaint by the executor.—2 Wms. on Ex'rs 848. And so, (we feel safe in adding,) the assent of an executrix to a specific legacy of a life estate in two slaves to herself, ought to be presumed, when the facts are, that she is the widow of the testator ; that she did not dissent from the will within the year after its probate, as she might have done, under the act of 1812, (Clay's Dig. 172-3,) greatly to her own pecuniary advantage ; that she promptly qualified as executrix, and for at least three years continued as such to keep the property together (as directed by the will) for the purpose of raising,

educating, and benefiting the children of the testator; that in the meantime, by her industry, economy, and skilful management of the estate, she has totally exonerated it from all indebtedness; that in all these matters she acted in good faith; that *after all the debts of the estate were paid* as aforesaid, she ceased to be executrix; and that in her account current for a final settlement of her administration, she claimed a credit or allowance for a certain amount for the services rendered to the estate by the two slaves specifically bequeathed to her as aforesaid, since the death of the testator.—Gantt v. Phillips, 23 Ala. 275. From these facts, we feel bound to presume the assent of the executrix to the specific legacy of the said two slaves to herself.

It makes no difference, in this case, when that assent was given; for, if not given *until after all the debts were paid,* nor until the day before she ceased to be executrix, it had relation to the time of the testator's death, and entitles her to an allowance against the estate for the amount she proved the services of these two slaves to have been worth to the estate since the testator's death.—2 Wms. on Ex'rs 849, 850, 876, 877.

The Probate Court erred in refusing this allowance to the appellant.

We now proceed to inquire, whether the Probate Court decided correctly, in refusing to the executrix any credit or allowance for the lawful jail fees set forth in the bill of exceptions, which she paid to the jailor of Macon county to regain the possession of certain slaves of the estate, who had been arrested and lodged as runaway slaves in the jail of said county in August and September, 1852.

If the executrix, after ascertaining that these slaves were in jail, had, without some legal excuse, permitted them to remain there, thus increasing the jail fees, and depriving the estate of their services, she would have been guilty of a violation of her duty. No reason, or excuse, is shown why she should not have taken them out of jail. She could not get them out, without paying the jail fees. Yet the court below has, in effect, decided that, although she did pay the fees, and thereby restored the slaves to the service of the estate, she shall lose the money thus paid for the benefit of the estate.

The record shows, that the testator left his estate much in

debt; that he directed his property to be kept together until the occurrence of one of several specified events; that neither of the events thus specified has yet occurred; that the executrix is the mother of his children; that she has kept the property together, and freed the estate from debt; and that she and her children are the only persons who can possibly lose anything by the abuse of the slaves, or by any other improper management of the estate. The record also shows, that in 1852, and prior thereto, the executrix had in her employ an overseer who was cruel and severe upon slaves; that some of the slaves had been severely whipped by him, and several of them had run away in consequence of his cruelty, and been taken up and committed to jail, for which and other jail fees allowance had been made; that these things had occurred before the particular slaves ran away for whose jail fees a credit or allowance was now claimed by the executrix; and that said overseer made good crops, and continued in the service of the estate until in the fall of 1852, when he was discharged by the executrix on account of his severity to slaves. Such is, in substance, all the evidence relating to the decision now under consideration.

An executrix, in this State, has all the rights and powers which she has by the common law, except so far as those rights and powers are abridged or modified by statute.—Woolfork v. Sullivan, 23 Ala. 548. Under such a will as that of the testator in this case, the law allows a large discretion to the executrix, in the management of the estate, and in the selection of overseers. In the exercise of this discretion, she is not to be subjected to liability, if her acts are not unlawful, and are attended with reasonable diligence and good faith.—Hext v. Porcher, 1 Strob. Eq. 170.

Whether the executrix acted properly or improperly in employing such an overseer as she did employ, we do not feel called on now to decide; for, if it be conceded that, in employing him, she acted improperly, we all agree that the evidence does not prove that the running away of the particular slaves as to whom the jail fees in question were paid, was the proximate result of her act in employing him.—Jones v. Donnell, 13 Ala. 491; Sedgw. on Dam. 74-5; Vickars v. Wilcocks, 8 East's R. 1; 2 Greenl. Ev. § 256.

Without deciding whether there are not other valid legal reasons, which would induce us to hold the action of the court below erroneous, in refusing to the executrix any allowance for the jail fees specially set forth in the bill of exceptions, to-wit, those paid by her in August and September, 1852, it is clear from the single ground above stated, that the Probate Court erred in this refusal. And for the errors in the several rulings above considered, the decree of the Probate Court is reversed, and the cause remanded.