## WYATT'S ADM'R *vs.* SCOTT.

[TROVER FOR CONVERSION OF SLAVE.]

1. *Presumption from lapse of time.*—In an action brought by an administrator *de bonis non*, against one claiming under a purchase at a public sale by the administrator in chief, the regularity of the sale, and of the order under which it was made, may be presumed from the lapse of twenty years, accompanied with proof of adverse possession under the sale for that length of time, and of the fact that the records of the court were loosely kept about the time when the order of sale was made.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Thomas M. Williams, as the administrator *de bonis non* of Peter Wyatt, deceased, against James J. Scott, to recover damages for the alleged

conversion of a slave named Elbert; and was commenced on the 10th October, 1857. The defendant pleaded, "in short by consent, not guilty, and *ne unques administrator;*" and issue was joined on these pleas. The cause was tried on an agreed statement of facts, as follows:

"Elbert, the slave in controversy, belonged to Peter Wyatt, deceased, at the time of his death. On the 4th November, 1833, letters of administration on the estate of said Wyatt were granted by the orphans' court of Lowndes county, where he died, to Mrs. Mary A. E. Wyatt and William N. Mock. Mrs. Wyatt continued in said administration up to March, 1852, and Mock continued until his death in 1845. On the same day said letters of administration were granted, the judge of said orphans' court made the following orders:

"'Ordered by the court, that the administrators of the estate of Peter Wyatt, deceased, have leave to sell all the perishable property of said deceased, upon a credit of at least six months.' 'Ordered by the court, that the administrators do make a full and true inventory of said sale, and return the same to this court to the first term thereafter.' 'Ordered by the court, that the administrators give a notice of said sale, by advertisement at three or more public places in said county, at least thirty days previous thereto, of the time and place of said sale.' 'Ordered by the court, that the administrators of the estate of Peter Wyatt, deceased, have leave to sell his present crop of cotton, at public or private sale, as they may deem most advantageous to said estate.'

"In February, 1834, after having duly advertised the sale of the personal property of said estate, under the above orders, the administrators proceeded to sell, at the late residence of the deceased, to the highest bidder, at public sale, all the personal property belonging to said estate, including among the slaves the boy now in controversy. There were a great many persons present, and the property brought full prices. The property was sold on a credit until the 1st January, 1835; and the terms of sale were proclaimed when the property was put up. The slave in controversy, who had been appraised at $250,

was bid off by Benjamin Mock, a brother of the administrator, for $336 50. In March, 1834, the administrators made and returned to said orphans' court a sworn sale-bill of all said personal property, including all the slaves and cotton, the prices at which the various articles were sold, and the names of the respective purchasers; and thereupon, at the same term of the court, the following orders were made by said court, and entered on its minutes: 'Now, at this term of the court, William N. Mock, one of the administrators of Peter Wyatt, deceased, came into court, and made return of a sale-bill of the property of said deceased; whereupon it is ordered by the court, that the clerk enter the sale-bill upon record, in the inventory book kept for that purpose; and it is further ordered, that the clerk file the original sale-bill in his office as an office-account.'

"Shortly after said sale, the slave in controversy went into the possession of said Benjamin Mock, who complied with the terms of said sale, and paid the purchase-money, and lived in said county eight or ten years afterwards. Said slave was subsequently sold by Mock to one Moorer, and, after passing through the hands of several persons, was finally purchased by the defendant on the 27th February, 1851, who paid full value for him. The purchase by Mock, and all the intermediate sales from him to the defendant, were for valuable consideration, without notice of any adverse claim. Said Mock, and all who held said slave under him, had notorious, uninterrupted, and exclusive possession of said slave, claiming to own him, from the time of said purchase by Mock. The defendant went into possession of said slave about the —— day of ——, 1853. The said slave was worth, at the time of the conversion, which was two years before October, 1857, about $800."

A transcript from the records of the probate court of Lowndes was also read in evidence, by consent, "as evidence of the matters therein set forth." This transcript contained, 1st, the petition of William B. Wyatt, a son of said Peter Wyatt, deceased, which was filed on the 8th March, 1852, asking the revocation of the letters of

administration formerly granted to Mrs. Wyatt, and the grant of letters of administration *de bonis non* to Thomas M. Williams; and 2d, the decree of the court, granting the prayer of the petition, revoking Mrs. Wyatt's letters, and granting letters *de bonis non* to said Williams. This petition alleged, that William M. Mock had removed from the State and died; that Mrs. Wyatt had married one Thomas D. Armstrong, and removed with him to Louisiana; and that no final settlement of their administration had been made. The decree of the court recited, that these facts were proved; and further, that Mrs. Armstrong's written resignation, signed only by her, "had been presented to the court."

"It was admitted, also, that said transcript contains a recital of all the facts which transpired in relation to the subject-matter of said orders; and further, that the probate judge of Lowndes county will prove, that no notice was ever given by said court, either to William N. Mock, Mrs. Wyatt, or Thomas D. Armstrong, before the making of the order revoking their letters, requiring them to make a settlement of said estate. It was agreed, also, that the court might decide upon the competency of this evidence of the probate judge, reserving to either party the right of exception; and if decided to be competent by the court, the fact shall be considered as proved before the jury."

"There was evidence, also, tending to show that, during the years 1832, 1833, 1834, and 1835, the judge and clerk of the orphans' court of Lowndes were careless and negligent in the discharge of their official duties; and that the records and papers of said court, during that period, were very loosely kept."

"This being all the evidence in the cause, the court charged the jury, that if they believed the evidence, they might, after this lapse of time, presume from the evidence that the sale of the slave in controversy by the administrators in chief, and the order under which it was made, were regular;'" to which charge the plaintiff excepted, and which he now assigns as error.

Armour v. Lose.

THOMAS WILLIAMS, and JOHN D. F. WILLIAMS, for the appellant.

BAINE & NESMITH, *contra.*

WALKER, J.—The decisions of this court, in the cases of McArthur v. Carrie's Adm'r, 32 Ala. 75; Milton v. Haden, 32 Ala. 30; Lawson v. Lay, 23 Ala. 377; and Gantt v. Phillips, 23 Ala. 275, are conclusive in favor of the correctness of the charge given by the circuit court; and on the authority of those decisions, the judgment of the court below is affirmed.

STONE, J., not sitting.