## BARNETT'S EXECUTOR *vs.* TARRENCE.

1. Where the record shows an irregular final settlement of an estate, the court will presume in favor of its correctness, after the lapse of twenty years, that the necessary notices were given, and that the parties in interest were present.

2. Where the parties in interest appear, and consent to the postponement of the settlement, they cannot afterwards be heard to complain of any irregularity in the manner of bringing them in.

3. Where the slaves returned in the executor's inventory as belonging to the estate are divided by commissioners, under an order of the Orphans' Court, among the distributees, and after the lapse of twenty years one of the distributees attempts to charge the executor with the value of other slaves not included in the inventory, and shows no excuse for his delay, his claim cannot be asserted or allowed in the Orphans' Court.

ERROR to the Court of Probate of Dallas.

David Barnett died in the year 1828, and his will was admitted to probate at the September term, 1828, of the Orphans' Court of Dallas County, by which he appointed William Barnett and James Olds his executors, to whom letters testamentary were granted at the same term.

The will provides that the estate shall be kept together for the use of the widow until the 1st day of January, 1830, and at that time should be distributed among the testator's widow and heirs at law, according to the laws of distribution of this State.

The executors proceeded to pay all the debts of the estate, and, as appears by the record, procured an order at the December term, 1828, for a distribution of the slaves; and commissioners were appointed to make distribution as directed by the will, who reported their proceedings to the March term, 1829. This report was received, confirmed, and ordered to be recorded by the court.

At the January term, 1832, the executors applied for and obtained an order to make final settlement, and, after being continued until the 12th June, 1832, a settlement was made, which the judge orders to be received and admitted to record as a final settlement.

On the 17th of September, 1851, on the application of one Wm. H. Tarrence, whose connection with and interest in the estate are nowhere shown by the record, a citation was issued to William Barnett, surviving executor of David Barnett, deceased, requiring him to appear and show cause why he should not make a final settlement of the estate of his testator. After several continuances, and sundry orders to compel his appearance, he came into court at the March term, 1852, where by an order of the court the proceedings against him were dismissed at the costs of the petitioner.

At the May term, 1852, another citation was issued against the surviving executor, to show cause why he should not make final settlement, and on his not appearing to this citation the court proceeded to state an account *ex parte*, and issued a notice to the executor requiring him to come forward and show cause why the account so stated should not be reported and allowed as a final settlement of the testator's estate. To this notice the executor appeared, and at the November term, 1852, pleaded the former settlement, *nul tiel record*, and some other plea which the record does not sufficiently disclose to be understood; all the issues, however, were decided against the executor, and a judgment rendered against him for $3042 25. This sum is said to be the value of two slaves, Harriet and Nelly, claimed and held by James Olds, one of the executors, as his own property, with interest on that value from the 1st day of January, 1830.

Under the view taken of this case by the court it is unnecessary to set out the proof found in the record concerning the title of these slaves; it is sufficient to say that they were never returned by the executors in their inventory as a part of the estate of their testator, but were claimed and held by Olds as his own property, he having possession of them at the testator's death.

Olds died before Tarrence commenced this proceeding, but at what time does not appear.

It is here assigned for error:

1. That the court below disregarded the final settlement of 1832, and proceeded to render a decree at the November term, 1852.

2. That the court below erred, in rendering a decree against the executor on the proof before it.

3. That the court erred, in charging the executor with the value and hire of the slaves Harriet and Nelly.

GEORGE W. GAYLE, for plaintiff in error :

1. There was a final settlement of this estate in the year 1832; and there has been no reversal of that decree, no disturbance of it by bill in chancery or otherwise. Therefore, the Probate Court had no jurisdiction to disturb in November, 1852. As to what is a final settlement, see Andrews v. Hall, 15 Ala. 85.

2. After an executor's account has been audited and allowed, and forty days' notice given, the account cannot be re-examined on final settlement, unless it is objected to within forty days. —Horn v. Grayson, 7 Porter 207; Taylor v. Reese, 4 Ala. 121; Lampkin v. Heyer, 19 Ala. 228 ; Fitzpatrick v. Hill, 9 Ala. 783 ; Slatter v. Glover, 14 Ala. 650.

3. If error occurs in a settlement, it can only be reached by error to the Supreme Court, unless fraud is alleged in equity. —6 Porter 219, and cases above cited.

4. The slaves decreed to be accounted for, were a gift from David Barnett to Olds and wife, as shown by proof.—Hill v. Duke, 6 Ala. 259 ; Olds v. Powell, 7 Ala. 655. This position is taken, if the Probate Court had jurisdiction after the settlement in 1832.

5. If the slaves Harriet and Nelly were not a gift, then Olds held six years' adverse possession of them, and this gave him a title, even if he held under a loan.—Pool v. Harrison, 16 Ala.

GEORGE W. STONE, contra :

1. There had been no final settlement in this case; that which is relied on as a settlement, wants many of the essential requisites.—Horn v. Grayson, 7 Porter 270 ; Taylor and Wife v. Reese, 4 Ala. 121; Douthit v. Douthit, 1 Ala. 594 ; Ashley v. Ashley, 15 Ala. 15 ; Willis v. Willis, 16 Ala. 652.

2. Joint executors are regarded as an individual ; when they execute a joint bond, they are severally liable for the acts of each other, and the sureties for the whole.—1 Lomax on Executors 333; Harrison and Wife v. Williams, 19 Ala. 277; Little v. Knox, 15 Ala. 576.

3. Permitting Olds, co-executor in this case, to retain the

slaves Harriet and Nelly, was a *devastavit* by both executors.— 2 Lomax on Executors 288, 289; Quick and Wife v. Stains, 2 Esp. 657; S. C., 1 Bos. & Pul. 293; Hughes v. Mitchell, 19 Ala. 268, 271.

4. The possession of Olds, being acquired by permission, never became adverse. Moreover, he being executor, his possession will be referred to his right as such. An executor or trustee can never hold adversely to the legatee or *cestui que trust*, until after a regular and legal final settlement.—Strong v. Strong, 6 Ala. 345; Cole v. Hebb, 7 Gill & Johns.. 20; Whaley v. Whaley, 1 Spear's R. 225; Smoot v. Watkins, 8 Missouri 522; Alden and Wife v. Gilmore, 13 Maine (1 Shep.) 178; 12 Vermont 205; Moore v. Johnson, 2 Spears' Reports 288.

5. On the facts of the case, see the statement of facts in Cole v. Hebb and Smoot v. Watkins, *supra*.

LIGON, J.—The final settlement of the estate of David Barnett, deceased, made in June, 1832, does not appear to have been in any manner questioned in the court below on the trial from which this writ of error is prosecuted, or, in other words, it does not appear that the fairness of that settlement, as to the assets of the estate embraced in it, was denied; its character as a final settlement of the whole estate of the testator was alone put in issue.

It is true the record does not show that the parties in interest were all brought in as the statute requires, or that the notices were regularly served, or that publication was made according to the order of the court made at the January term, 1832, appointing the second Monday in April, 1832, as the time when such final settlement should be made. But at that term of the court, it appears by the record, an entry was made in these words: "This being the day set apart for the final settlement of David Barnett, deceased, came the executors of said estate, and by consent said final settlement is postponed until the Tuesday after the second Monday in May next."

After so great a lapse of time as has intervened between the making of the order for final settlement in this case, and the time at which the defendant in error exhibited his petition for citation against the surviving executor, requiring him to make

final settlement, (a period of more than twenty years,) this court will presume, in favor of the correctness of that settlement, that the necessary notices were given, and that the parties in interest were present, consenting to the continuance. If they appear and are consenting to the action of the court in one part of the proceeding, they cannot afterwards be heard to complain of any irregularity in the manner of bringing them in. In such case, the court acquires jurisdiction of the persons by such voluntary appearance, and may well proceed to judgment or decree in the cause. A decree rendered under such circumstances is binding on the parties to it, until it is reversed in the proper court; and the court rendering it has no power to review or annul it.

In this case, the Orphans' Court proceeded, on the application of the executors above referred to, to audit, state, and settle their accounts with the estate of their testator, and finding that a balance of $385 50'was due to one of the legatees, rendered a decree in her favor against the executors for that sum; and the account, thus stated, was ordered to be recorded, and the order further proceeds, " and that said account current be received, and the vouchers filed, and that thence the said estate be finally settled."

The executors cannot now be called upon in the Probate Court to go into a settlement again, when all parties have reposed upon that already made for so long a period that it is fair to presume, that much of the proof which was then attainable could not now be commanded, and, in all probability, injustice would be the result.

2. In the case of Rhodes v. Turner and Wife, 21 Ala. 210, it is said, " If a final judgment had been rendered, according to the principles of the common law, it would be presumed to have been paid after the expiration of twenty years; and if the parties allow this period to elapse without taking any steps to compel a settlement, we think the presumption of payment arises, and the executor or administrator should be exempted from the necessity of hunting up evidence to prove the accounts and vouchers which ordinarily enter such settlements, and which, after such a lapse of time, it would perhaps be impossible to obtain. This period of twenty years, we apprehend, would date from the time when the administrator or executor

might have been called to a final settlement of the estate."

We have carefully examined the grounds on which the rule here suggested is founded, and are thoroughly convinced its adoption is essential to the safety and repose of executors, administrators and guardians, and to the advancement of the ends of common justice. It is strictly analogous to the rule at common law in relation to judgments, and more liberal than the rule in equity with respect to stale claims.

Let us apply it to the present case, so far as it relates to the slaves Harriet and Nelly, whose value, and interest on that value, form the sole basis of the decree of the court below.

The slaves of the estate, so far as the executors make any return of them in their inventory, were divided by commissioners, by virtue of an order of the Orphans' Court, among the parties in interest under the will of David Barnett, deceased, on the 27th of December, 1828, and we may presume that each party went into possession of his portion. The names of the slaves in controversy do not appear in the inventory, or in the list of those allotted to the several legatees. In fact, nothing is ever said of them in the record, until proof is introduced on the trial of the issue at the November term, 1852. By the will of David Barnett, the estate was subject to division on the first day of January, 1830, and from some cause, not stated in the record, the slaves were actually divided in the year 1828.— Thus, nearly twenty-two years are permitted to elapse before any attempt is made to charge the executors with these slaves. A claim so stale, and unaccompanied by any proof which will tend to account for the delay in asserting it, cannot be asserted or allowed in the Orphans' Court.

The attempt made by the defendant in error to bring about a final settlement of the estate of David Barnett, deceased, in the year 1851, in which his petition was dismissed by the court at his cost, so soon as the surviving executor appeared, cannot aid his claim. This too, was made after the expiration of twenty years, from the time fixed by the will for the distribution of the property, and at which such distribution, as well as a final settlement, could have been coerced.

Let the decree be reversed, and the cause remanded.