# BLACKWELL'S ADM'R vs. BLACKWELL'S DISTRIBUTEES.

### [BILL IN EQUITY FOR DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Election by distributees to ratify conversion by administrator.*—If an administrator converts the assets of the estate into other specific property, the distributees may, at their election, either charge him with the value of the converted assets, or pursue and claim the specific property obtained in exchange.

2. *Statute of limitations not available to executor or administrator.*—An executor or administrator cannot invoke the statute of limitations, to protect himself against the claim of distributees, unless he has denied the continuance of the trust, or set up a claim in his own right.

3. *Nor lapse of time, if trust is recognized.*—Ordinarily, the lapse of twenty years from the time when the administrator might be compelled to settle his administration, without the institution of proceedings to compel a settlement, raises the presumption of a settlement and the payment of the distributive interests; but this presumption is repelled by proof that the administrator holds, not in his own right, but in subordination to, and recognition of the rights of the distributees.

4. *Amendment of bill.*—Where the original bill was filed by the husband, as sole legatee of his deceased wife, to recover her distributive share of her father's estate; and the amended bill set up a marriage contract between him and his wife, which secured to him a life estate in her personal property, with remainder to her separate use,—*held*, that the amendment did not make a new case, since each of the titles asserted vested in the complainant the entire interest in the property sought to be recovered.

5. *Who may join as plaintiffs.*—Where a marriage contract secures to the husband a life estate in his wife's personal property, with remainder in fee to the separate use of the wife, who, on her death, makes her husband her sole legatee, the wife's personal representative may join with her surviving husband in a bill to recover her distributive share of her father's estate; and if no letters of administration on her estate have been granted at the time of the exhibition of the original bill by the husband, her administrator, when subsequently appointed, may be brought in as a co-plaintiff in an amended and supplemental bill.

6. *Parties to bill for distribution.*—To a bill which seeks the settlement and distribution of an intestate's estate, and which is filed by a distributee against the personal representative of the deceased administrator, the administrator of the intestate whose estate is sought to be distributed is a necessary party.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THE original bill in this case was filed, on the 27th February, 1845, by William G. Vastbinder, in behalf of himself and all the other distributees of the estate of Nathan Blackwell, deceased, or such of them as chose to make themselves parties and contribute to the expenses of the suit; and sought to compel a settlement of said estate by James Blackwell, as the administrator of Mrs. Priscilla Blackwell, deceased, who was the widow and administratrix of said Nathan, and the recovery of the distributive portion of said estate which the complainant claimed as the sole legatee of his deceased wife, who was

a daughter of said Nathan Blackwell. Nathan Blackwell died in 1807. His widow administered on his estate, and kept up the family relation until her death, which occurred in 1844. In 1841, the complainant intermarried with one of said Nathan's daughters, who, on her death, (at what time does not appear,) made him sole legatee under her will. The bill was several times amended, and bills of revivor and supplement were filed. The points made on the pleadings, as well as the material facts which involve the merits of the case, are fully presented in the opinion of the court. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants; and his decree in that behalf, together with his several interlocutory decrees, is now assigned as error.

THOMAS WILLIAMS, for the appellant.

PEGUES & DAWSON, *contra*.

STONE, J.—Our first impression was to dismiss the bill in this case, on account of the staleness of the demand. Looking more closely into the record, we think that position indefensible. True, near forty years elapsed between the qualification of Mrs. Priscilla Blackwell as administratrix, and the exhibition of the original bill. True, the property which is ordered to be distributed under the chancellor's decree, was purchased about fifteen years after the death of Nathan Blackwell, the intestate. Under these circumstances, if they stood alone, we would feel bound by our former decisions to hold that this claim could not be maintained.—See Rhodes v. Turner, 21 Ala. 210; Barnett v. Tarrance, 23 Ala. 463; McArthur v. Carrie, 32 Ala. 75.

These facts, however, do not stand alone. The proof tends strongly to show, that the slaves Rose and Polly, from whom the other slaves in controversy have descended, were purchased mainly, if not entirely, with means derived from the stock of cattle left by Nathan Blackwell at the time of his death. This, however, would not take the case out of the operation of the principle above asserted.

The proof in this record further shows, that Mrs. Blackwell and most of her children lived together as one family, after the death of Nathan Blackwell, for a period of between thirty and forty years; that all labored for the promotion of the common interest, and for the common support of the family; and that the increase of the property was aided materially by such common labor, and by a system of rigid economy which all seem to have observed. On these facts, if they stood unexplained, we would feel it our duty to hold, that Mrs. Priscilla Blackwell and her children held these slaves as tenants in common. If these were the only facts, possibly no relief could be obtained under the pleadings in this record, because of a variance between the allegations and the proof.—Lockhart v. Cameron, 29 Ala. 355; Williams v. Barnes, 28 Ala. 613.

But there is another feature of this record which must exert an influence in this connection. The sons of Mrs. Blackwell, who might assert some claim to these slaves under the principle last considered, and who lived with her up to the time of her death, have not asserted that claim; and after her death, they have conceded that the slaves are the property of her estate. In fact, it does not appear that they ever did set up any claim to this property in their own right, or that they have ever preferred any claim for the labor and services bestowed by them, either against their mother in her own right, or as the representative of their father's estate. According, then, to their concessions, this property has all the time been owned by their mother.

On the other hand, the bill avers, and the proof shows, that Mrs. Priscilla Blackwell has not claimed this property in her own right. After the marriage of her daughter Sarah to Mr. Vastbinder, in 1841, she spoke of these slaves as belonging to her husband, Nathan Blackwell's estate, and expressed a wish that they should be divided among her children. She expressly distinguished between these slaves and other property confessedly hers.

Under the circumstances disclosed in this record, we think certain well ascertained and defined legal princi-

ples demonstrate the right of Nathan Blackwell's distributees to have distribution of the slaves Rose and Polly and their increase, subject to the contingency and qualification after stated.

1. Where administrators convert the property of the estate into other specific and traceable effects, the distributees may charge them with the value of the converted property, or may elect to claim and pursue the property for which it has been exchanged.—Kavanaugh v. Thompson, 16 Ala. 817.

2. Trustees, such as executors and administrators, can not invoke the statute of limitations, to protect their possessions against the claim of distributees, unless they have denied the continuance of the trust, or set up claim in their own right.—Angell on Lim. §§ 168 to 174.

3. Although, after the lapse of twenty years from the time when Mrs. Blackwell should have settled her administration, we would, under ordinary circumstances, presume a settlement and payment of the distributive interests; yet, when the trustee holds, not in his own right, but in subordination to, and recognition of the rights of the *cestui que trust*, this presumption from mere lapse of time is repelled, and the bar is not perfected.—McArthur v. Carrie, 32 Ala., and authorities cited; Milton v. Haden, 32 Ala. 30; Cholmondely v. Clinton, 2 Jacob & Walker, 1; Angell on Limitations, § 164.

Connecting the fact that the stock of cattle left by Nathan Blackwell furnished the means, either in whole or in part, with which the slaves Rose and Polly were purchased, with the manner and character of Mrs. Blackwell's holding, and with her admissions made shortly before her death, and shortly before this bill was filed, this claim is relieved of the imputation of staleness. Kimball v. Ives, 27 Ver. 430.

It may become a question in the farther prosecution of this case, to what extent the effects of the estate of Nathan Blackwell entered into the purchase of the slaves Rose and Polly. Also, whether the trustee has blended the trust effects with her private funds, and the effect of such blending. We leave these open for the action of the court

below, without intimating at present any opinion whether the entire property in them, or only a partial interest, should be distributed. The chancellor, aided or not by a reference as he may elect, will be enabled to settle these questions more satisfactorily than we now can do.

This case, in its preparation, has had an eventful history. Six or seven amendments, supplements, and revivors, have been filed. We do not propose in this place to give their details. The rule is, that all amendments which are properly allowed, take effect, so far as the equity of the bill is concerned, as of the date of the original bill. Three questions are raised on the amendments, which we propose to consider.

1. Mr. Vastbinder filed the original bill in his own name alone, claiming the distributive interest of Mrs. Vastbinder in Nathan Blackwell's estate, under and by virtue of the provisions of her will, which constituted him her sole legatee. The original bill avers, that by a marriage contract, the property of Mrs. Vastbinder was secured to her separate use and enjoyment. The will had been proved and established, but it does not appear that her executor or any other person had qualified as her personal representative. In the original bill, no attempt was made to set forth the provisions of the marriage contract, further than is above stated.

An amended bill was subsequently filed, which exhibited the marriage contract. By its provisions, a life estate in the personal property of Mrs. Vastbinder is secured to her husband, and a separate estate in the remainder to her.—See Pollard v. Merrill, 15 Ala. 169. It is here contended, that this amendment was improperly allowed, because its effect was to make a new case. In this connection, we feel it our duty to state, that in one of the amended bills it is averred, that Mrs. Vastbinder, at the time of her death, owed no debts; and no issue has been formed on this averment.

The only difference between the right which Mr. Vastbinder asserts in his original bill, and that which he presents in his amended bill, consists in the different channels through which the interest accrues to him. Each state of

case gives him the entire interest; the former, as sole legatee of his wife's unincumbered distributive interest in Nathan Blackwell's estate; the latter, as owner of a life estate under the marriage contract, and the remainder as sole legatee under his wife's will.

In Ingraham v. Foster, 31 Ala. 528, we sanctioned an amendment which departed from the original bill in a particular more important than this. We, in that case, employed the following language : " To make an amendment improper, it is not enough that there be a mere inconsistency, or repugnancy of allegation. There must be an inconsistency, or repugnancy, in the purposes of the bill, as contradistinguished from a modification of the relief. One of the purposes of a chancery amendment is to correct an erroneous statement of the facts." We hold, that the amendment in this case did not make a new case. See, also, Larkins v. Biddle, 21 Ala. 252.

2. The original bill was filed in the name of Mr. Vastbinder alone. A supplemental bill brought in the personal representative of Mrs. Vastbinder as co-complainant. It is contended here, that Mr. Vastbinder had no such interest in the distributive share of Mrs. Vastbinder as authorized him to unite with her personal representative in a bill for its recovery.

We might content ourselves, in answer to this objection, with simply stating that, under the marriage contract, Mr. Vastbinder has a valuable interest, and the personal representative of Mrs. Vastbinder has also an interest. Both are interested in the property to be recovered, although their interests are not co-extensive. This renders them proper, if not necessary parties.—1 Dan. Ch. Pr. 272.

There is at least one adjudged case which goes further, and holds that, even if Mr. Vastbinder had no other interest than as legatee of Mrs. Vastbinder, he might unite with her personal representative in a chancery suit for the recovery of her distributive interest; and this would furnish no error of which the defendants could take advantage.—Rhodes v. Warburton, 6 Sim. (9 Eng. Ch. Rep.)

617; Story's Equity Pl. § 510; 1 Dan. Ch. Pr. 251. We hold, there was no misjoinder of complainants.

3. As Mrs. Vastbinder had no personal representative at the time the original bill was filed, and as such personal representative is a necessary party to this suit, it may be contended, that it was irregular to make the executor, who afterwards qualified, a co-complainant; and that this irregularity vitiates the complainant's bill. In a case involving this precise question, the amendment was held regular; the court remarking, that "the grant of letters of administration related to the time of the death, like the case where an executor, before his proving the will, brings a bill; yet ,his subsequent proving the will makes such bill a good one."—Humphreys v. Humphreys, 3 P. Wms. 349; 1 Dan. Ch. Pr. 460–1. This amendment was properly allowed.

The slaves Rose and Polly, and their increase, still remain in specie. According to the principles above settled, they are, either in whole or in part, the property of the estate of Nathan Blackwell, deceased. An inquiry may become necessary, to determine whether the entire property, or only an interest in it, belongs to the estate of Nathan Blackwell; and if only a partial interest, to what extent that interest goes. On the trial of that issue, and the settlement of Mr. Blackwell's estate, there should be some one to represent that estate. Since the death of Mrs. Priscilla Blackwell, there has been no administrator of said Nathan's estate. It has been settled in this State, that in such case, it is indispensable that there should be an administrator of the estate of which distribution is claimed, and that such administrator shall be made a party to the suit. This principle rests on solid reasons, and is well supported by authority.—Gardner v. Gantt, 19 Ala. 666; Robinson v. Robinson, 11 Ala. 947; Logan v. Fairlie, 2 Sim. & Stu. 284; Alexander v. Stewart, 8 Gill & Johns. 226; Moor v. Blagrave, 1 Cases in Chancery, 277; 1 Dan. Ch. Pr. 253; Story's Eq. Pl. § 172.

For the errors above pointed out, the decree of the chancellor must be reversed, and the cause remanded. The complainants can apply for leave to perfect their

pleadings, after the proper court shall have appointed an administrator *de bonis non* to the estate of Nathan Black-well, deceased.—Bloodgood v. Hartley, 16 Ala. 233. Let the appellees pay the costs of this appeal, to be paid out of the assets of the estates they severally represent.