## CAIN vs. GIMON.

[BILL IN EQUITY TO SET ASIDE SALE UNDER MORTGAGE.]

1. *Effect of amendment of bill.*—So far as the equity of the bill is concerned, an amendment takes effect as of the date of the original bill.

2. *What amendments are allowable.*—A mere inconsistency, or repugnancy, between the allegations of the original and amended bills, does not render the allowance of the amendment improper: there must be an inconsistency, or repugnancy, in the purposes of the bill, as contradistinguished from a modification of the relief sought.

3. *Purchase by mortgagee at mortgage sale; who may impeach it, and on what ground.*—The wife of the mortgagor, claiming under a voluntary conveyance from her husband subsequent to the mortgage, may, in equity, impeach the validity of the sale under the mortgage; and if her bill alleges that the mortgage debt was nearly (if not quite) paid, that the mortgagee concealed from her the true state of the account between himself and the mortgagor, had the property sold for a pretended debt greater than was actually due, and, in effect, became himself the purchaser at the sale, she makes out a case for equitable relief.

4. *Offer to do equity.*—In a bill filed by a voluntary purchaser from the mortgagor, seeking to set aside the sale under the mortgage on the ground of fraud, and to be let in to redeem, an averment that the complainant is ready to pay the amount admitted to be due on the mortgage debt, "and hereby tenders that amount, or any other sum that may be found due, and submits herself to this court for its decree in that behalf", is a sufficient tender.

5. *Estoppel against tenant from denying landlord's title.*—The acceptance of a lease from a stranger, by a party who is in possession of land, if done "in ignorance of his rights," does not estop him from afterwards impeaching the validity of such stranger's title.

6. *Who may take advantage of usury.*—The wife of the mortgagor, claiming under a subsequent voluntary conveyance from her husband, and seeking to impeach the validity of the sale under the mortgage, and to be let in to redeem, cannot take advantage of usury in the mortgage debt.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. JAMES B. CLARK.

Cain v. Gimon.

THE original bill in this case was filed, on the 5th November, 1857, by Mrs. Mary Jane Cain, suing by her next friend, against Dominique Gimon, J. R. Lassabe, and Alphonse Hurtel. Its object was, to set aside as fraudulent a sale made under a mortgage, or deed of trust, made by Lassabe as trustee; to have the accounts between the mortgagor and mortgagee re-stated, and a redemption allowed to the complainant, who was the wife of the mortgagor. The mortgage was executed on the 11th September, 1851, by William Cain, then the husband of the complainant, and conveyed a certain lot in Mobile to said Lassabe as trustee, to secure the payment of a promissory note for $325, given by said Cain on that day to said Gimon, and payable twelve months after date; "said Cain to be permitted to remain in the possession of said lot until default, and the lot to be sold, in case of default, at said Gimon's request, at public auction, to the highest bidder for cash, after advertisement for at least ten days; the proceeds of said sale to be applied to the payment of the expenses thereof, then to the payment of the note, and the remainder (if any) to said Cain." The sale under this mortgage was made on the 13th October, 1856; and the trustee executed a deed to John Conche, as the highest bidder, upon the consideration of $300. On the 15th November, 1856, Conche sold and conveyed his interest, by quit-claim deed, upon the consideration of $500, to Gideon M. Parker, who, on the 27th May, 1857, by a similar deed, and upon like consideration, sold and conveyed to Gimon. The bill charged that Conche, in becoming the purchaser at the trustee's sale, "was in fact only the creature of Gimon; that the purchase by said Conche, and by said Parker from him, and by Gimon from Parker, were all merely colorable; that no money in fact really passed; but that the transactions were so done for, and at the request of said Gimon."

The complainant asserted an interest and title in the mortgaged premises under a voluntary conveyance from said William Cain, her husband, dated the 27th October, 1853; by which the premises were conveyed, in consideration of natural love and affection, to William J. Provost

as trustee, "for the sole use, profit and benefit of the said Mary Jane Cain and the heirs of her body." This deed was duly recorded, and the trust was accepted by Provost; but, on the 25th January, 1856, on the application of the complainant, the chancery court removed said Provost, and appointed Alphonse Hurtel as trustee in his stead. The bill sought to have the sale under the mortgage set aside, and the accounts between Cain and Gimon re-stated, on the ground of fraud in the sale, and of usury in the mortgage debt. The usury is thus charged in the original bill: "Complainant is informed and believes, and therefore charges, that the origin of said deed of trust from Cain to Lassabe as trustee was as follows: Cain borrowed from Gimon the sum of $250, for twelve months; Gimon loaned said sum to him in consideration of the usurious interest of two-and-a-half per cent. per month; and said Cain gave Gimon his promissory note for $325, (which included the principal sum loaned and one year's interest thereon,) and made said deed of trust to secure the payment of said note. Complainant is informed and believes, and therefore charges, that said Cain paid to said Gimon, and to said Lassabe for him, at three several times, as interest on said note, the sum of $225 in all; but she does not know the precise times of said payments, and seeks a disclosure of the same from said Gimon and Lassabe."

The 15th paragraph of the original bill was as follows: "Complainant charges, that said sale was made, as she is informed and believes, in fraud of her rights, and with the intention on the part of said Gimon to injure her; that said Gimon knew her poverty and helplessness, and that she was the beneficiary under the deed to Provost, and that her husband had abandoned her; yet said Gimon concealed the true state of accounts between him and said Cain, pretended that much more was due than was the fact, and finally directed his said trustee (Lassabe) to advertise and sell under his trust. The sale was for cash, and environed with such suspicious circumstances that no stranger would bid; and said Gimon was thus enabled to have it knocked down to said Conche, who was in fact

Cain v. Gimon.

his creature in the transaction." An amendment of the bill was afterwards allowed, by which this paragraph was stricken out, and the following inserted in lieu of it: " Complainant, though she is not informed of the actual state of the accounts between said Cain and Gimon, and of the manner in which they were made up at the time of the sale by said Lassabe, is informed and believes, and therefore charges, that the debt for which said deed of trust to Lassabe was made, amounted to only $250; that divers payments were made on the same by said Cain; that said Gimon overcharged his account, by compounding the interest, and by assuming the original debt to have been $325, instead of $250, the amount actually borrowed from him by Cain; that said accounts were made up by said Gimon and Lassabe, in the absence of, and without submitting them to said Cain, or to complainant, or to her said trustee, although said Lassabe, as well as said Gimon, had notice of said deed to Provost as trustee; that said Gimon did not credit said account with the amount which he received from Crevallaire,—the property conveyed to whom by said Gimon, this complainant charges, was worth at least $400 at the time of the conveyance; that the result of said accounting, whatever it was, was unjust to, and a fraud upon this complainant; that said fraud was deliberately perpetrated by said Gimon, and carelessly acquiesced in by said Lassabe without examination and investigation; and that the sale of said property by Lassabe, under said deed, was consequently made on false and fraudulent grounds."

The 16th paragraph of the original bill was as follows : " Complainant is informed and believes, and therefore charges, that the actual amount due to said Gimon, at the time of said sale, was less than $50; but, being ignorant of the sum that may be really due, and said Gimon fraudulently claiming the property as his own, complainant is not in a situation to make a tender to him, which she would willingly do." This paragraph was also stricken out by amendment, and the following inserted in its stead: " Complainant further saith, that she is informed and believes, and therefore charges, that without the credit

on said Cain's account of any sum whatever for the sale to Crevallaire by Gimon, said Cain's debt to Gimon was not actually more than $50, if so much, at the time of the sale by Gimon; and complainant hereby tenders that amount to said Gimon, and is ready to pay that amount, or any other sum that may be found due by Cain to him, and submits herself to this court for its decree in that behalf."

In reference to the sale to Crevallaire, alluded to in the amendments above copied, the original bill alleged, that William Cain, on the 1st December, 1854, sold and conveyed to Margaret Crevallaire, in consideration of $200, a portion of the mortgaged premises; that this portion of the premises was included in the deed to Provost as trustee, but was not sold under the mortgage; and that the complainant did not join with her husband in the conveyance. The amended bill added, "that Gimon, in January, 1855, made a deed of said land to said Margaret Crevallaire, for a valuable consideration paid by her to him, (how much, complainant is not informed;) and that said Gimon, at the time he made said deed, had notice of the existence of said deed to Provost, as trustee, for the benefit of the complainant."

The original bill alleged, that the complainant had been in possession of the premises sold by Lassabe, since the removal of Provost as her trustee, in January, 1856; that neither Conche nor Parker ever demanded rent of her; "that said Gimon, after Parker conveyed to him, called on her to take a lease, which she did in ignorance of her rights"; that this lease expired on the 1st November, 1857; and that Gimon afterwards notified her to quit the premises, and sued her for $20 arrears of rent.

The prayer of the original bill was, that Gimon might be enjoined and restrained from the further prosecution of his action at law; that the loan of money by Gimon to Cain might be decreed usurious; "that the sale by Lassabe, and the deed to Conche, be annulled and vacated; that the other deeds, completing the circuit of fraud whereby the property got to Gimon, be declared void; *that it be referred to the master to state the accounts be-*

*tween said Cain and Gimon, and that the court make such order and decree in the premises as equity and good conscience demand.*" The amended bill struck out the words which are italicized, and, in lieu of them, inserted the following: "Complainant prays, that said Gimon and his said trustee be held to account to her, as the beneficiary under said deed to Provost, for so much money as may be due to said Cain upon a full and complete settlement of the accounts between him and said Gimon; that it be referred to the master to state the accounts under the direction of the court, and that the court would grant such other and further relief in the premises as in equity and good conscience she may be entitled to."

The chancellor sustained a demurrer to the bill, as amended, for want of equity; and his decree is now assigned as error.

WM. C. EASTON, for appellant.

L. S. LUDE, *contra.*

STONE, J.—In Blackwell v. Blackwell, 33 Ala. 57, we said, "All amendments, which are properly allowed, take effect, so far as the equity of the bill is concerned, as of the date of the original bill." So, if the amendment was properly allowed, and the bill as amended contains equity, it should not have been dismissed for any defect in the original bill.

[2.] It is contended, however, that the amendment makes a new case, and should not have been allowed. In Ingraham v. Foster, 31 Ala. 123, we considered this question, and held that, "to make an amendment improper, it is not enough that there be a mere inconsistency or repugnancy of allegation. There must be an inconsistency or repugnancy in the purposes of the bill, as contradistinguished from the modification of the relief. One of the purposes of a chancery amendment is to correct an erroneous statement of the facts." To the same effect is Blackwell v. Blackwell, *supra.* The amendment in this case was allowable, and it does not make a new case.

[3.] It is further urged against the relief sought in this

case, that Mrs. Cain, not being a party to the trust deed from Cain to Lassabe for the benefit of Gimon, can not object to any irregularity in the sale. Brown v. Lipscomb, (9 Porter, 472,) Foster v. Goree, (5 Ala. 424,) Gary v. Colgin, (11 *ib.* 514,) and Herbert v. Hanrick, (16 *ib.* 581,) are cited in support of this position. In each of these cases, the question arose in actions at law; and in each case, the attempt was made, in a collateral proceeding, to pronounce the title defective. There is a marked distinction between the cases cited and the one we are considering. The deed executed by Mr. Cain to Provost, in trust for the sole use and benefit of Mrs. Cain, though voluntary, had the effect of conveying away all the interest which Mrs. Cain had in the lot. This interest, as against Gimon, and Lassabe his trustee, was an equity of redemption. Then, Mrs. Cain, the complainant, succeeded in equity to all the rights which had remained in her husband. One of those clear rights was, to pay off the mortgage debt, and redeem the land. The bill alleges, that the mortgage debt was nearly or quite paid; and that Gimon, by concealing the true state of the account, and falsely stating it, perpetrated a fraud on complainant, and procured the land to be sold under a pretended debt, much larger than the real liability. The bill further charges, in effect, that Gimon was the real purchaser at the trust sale. The fraud charged in the bill, if admitted or proved, is sufficient to set aside the sale—made, as it is charged, to the beneficiary—and to let in Mrs. Cain to redeem.

[4.] The amended bill contains a sufficient tender in cases like this.—Nelson v. Dunn, 15 Ala. 501; Billingslea v. Ware, 32 *ib.* 415.

[5.] The bill, as it is amended, offers a sufficient excuse for the delay in filing the bill, and for accepting a lease under Mr. Gimon.—Shelton v. Carroll, 16 Ala. 148, 153.

[6.] Under our decisions, Mrs. Cain can not make the defense of usury, that being a personal defense.—See Cook v. Dyer, 3 Ala. 643; Sayre v. Fenno, *ib.* 458; Harbinson v. Harrell, 19 *ib.* 753; Gray v. Brown, 22 *ib.* 262.

In the preparation of this opinion, we have considered

only the averments of the bill and amendments. The proof may fall far short of sustaining them.

Decree of the chancellor reversed, and cause remanded.