## WORLEY'S ADM'RX *vs.* HIGH'S ADM'R.

40  171
100  672

[BILL IN EQUITY FOR SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Construction of will, as to discretionary powers of executor and rights of widow on her second marriage.*—Where a testator directed that the greater part of his estate should be held and retained by his executor, for the use and support of his wife and children, until his youngest daughter attained the age of sixteen years, and should then be sold, and the proceeds divided equally among his wife and children; that, in the event of the second marriage of his wife before his youngest daughter attained the age of sixteen years, the property should be sold, rented, or hired out, as his executor might think most beneficial to the interest of his wife and children; and that his wife should, in either case, receive a child's part,—*held*, that the purpose for which the estate was to be retained by the executor, and the widow's right to the use of the property in common with the children, ceased on her second marriage; and that the discretionary power of the executor to rent or hire out the property, after that event, did not continue for a longer period than was necessary, under all the circumstances of the case, to bring the estate to a final settlement.

2. *Presumption of settlement of estate and payment of legacies, from lapse of time; staleness of demand.*—After the lapse of twenty years from the time when an executor or administrator may be cited to a final settlement, a final settlement of the estate, and the payment of the legacies or distributive shares, will be presumed; and a court of equity will not, in the absence of peculiar circumstances, entertain a bill to compel a settlement and distribution after that time.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JOS. R. JOHN.

THE bill in this case was filed on the 8th June, 1855, by Edward High, as the administrator of his deceased wife Nancy, who was a daughter of Adonijah Worley, deceased, against Mrs. Frances Worley, who was the widow and administratrix with the will annexed of said Adonijah; and sought a settlement and distribution of the estate of said Adonijah according to the provisions of his will. The said testator died in Dallas county, the place of his residence, between the 11th January, 1830, and the 14th February, 1831. His will, which was dated the 11th January, 1830, and duly admitted to probate after his death, contained the following provisions :

"I desire to be decently buried; after which I desire, that all sums due to me, in any manner whatsoever, may be collected with as little delay as possible, and that all just debts due by me may be paid as early as the means of doing so from collections will permit; and believing that there is not a sufficient sum due to me to enable my executors to discharge all the demands against me, it is my wish that my negro boy Joseph be sold, as soon after my death as practicable, on a credit of twelve months; and the money, when collected, to be applied to the payment of my notes in favor of the agents of the 'Selma Town Company.' Also, I desire that the brick remaining on hand, together with all the tools of every description whatsoever belonging or appertaining to the brick-yard, may be sold on a credit of twelve months; the proceeds to be applied to the payment of my debts. Also, I desire that the east half of the south-east quarter of section ten, township eighteen, range eleven, may be sold on a credit of twelve months, provided the same can be sold for one hundred dollars. It is my wish and desire, that all the lands which I own adjoining the town of Selma may be held and retained by my executor, for the use and support of my wife and children, together with two female slaves, viz., Eliza and Maria, all the household and kitchen furniture, and the stock of every description whatsoever, until my daughter Fanny Ann shall arrive at the age of sixteen years: then to be sold, and the proceeds equally divided between my wife and children, share and share

alike.  And should my wife again connect herself in marriage before my aforesaid daughter shall have become sixteen years of age, in that case it is my desire, that all the property which at that time may belong to my estate may be sold, rented, or hired out, as my executor may think most for the interest of my wife and children; and, in either case, my wife is to receive a child's part.  As my estate is not of a value that will exempt my children from labor, it is my desire that each of my sons shall learn some trade.  I therefore desire, that my executor will, as they shall severally arrive at the age of sixteen, permit them to make choice of such trade as they may prefer, binding them for such length of time as he may deem necessary for them to acquire a proper knowledge of the business they propose to learn."

The executor named in the will having refused to qualify, letters of administration on the estate, *cum testamento annexo*, were granted to Mrs. Frances (or Fanny) Worley, the widow of the testator, on the 14th February, 1831.  On the 18th February, 1834, Mrs. Worley contracted a second marriage.  Fanny Ann Worley, the daughter named in the will, attained her sixteenth year on the 20th January, 1844.  The plaintiff's intestate died on the 25th December, 1844, and letters of administration on her estate were granted to him on the 6th June, 1855.

Chancellor CLARK sustained a demurrer to the bill, for want of equity; but his decree was reversed by this court, on appeal, at its June term, 1858, and the cause was remanded.—See the report of the case in 32 Ala. 709–13. On final hearing, on pleadings and proof, Chancellor JOHN rendered a decree for the complainant; and his decree is now assigned as error.  The opinion of the court renders it unnecessary to notice the pleadings and evidence.

JONA. HARALSON, for appellant.

GAYLE & BROWN, JNO. T. MORGAN, and W. P. CHILTON, Jr., *contra.*

JUDGE, J.—In the court below, it was averred by way of plea on the part of the defense, and the averment was

sustained by the written admission of the parties, made to be used in evidence on the hearing of the cause, that the widow of the testator intermarried with Nathan D. Worley, on the 18th of February, 1834. What, under the will, was the effect of the marriage of the widow?

When this cause was heretofore in this court, this question was not considered—indeed, was not then presented by the record. The decision then pronounced was on a demurrer to the bill, for the want of equity; and the bill contained no allegation of the marriage in question. Another difference between the case as then presented, and as it now stands before the court, is this: Then, it appeared that Mrs. High died *before* Fanny Ann had arrived at the age of sixteen years; and the decision of the court was based, in part, upon this supposed fact; (*High's Adm'r v. Worley's Adm'rx*, 32 Ala. 709;) while now, it appears that she died about eleven months *after* the arrival of that period. But the view we take of the case renders it unnecessary to consider the effect, if any, of this change.

1. The testator dedicated the whole of his property to the use and support of his wife and children, until Fanny Ann should attain to the age of sixteen years; *provided* his wife did not "connect herself in marriage" before the arrival of that period. If she remained unmarried, the property was to be "*held and retained*," for the use and support of herself and the children, in common, for the period named; then it was to be sold, and the proceeds equally divided between them. But, if his wife should marry before Fanny Ann arrived at the age named, an important change in the condition of the estate was to be effected. In that event, the testator intended that the right of his wife to the use of the property in common with the children should cease, and that the executor should no longer hold it for that purpose; but, that he should, "in that case," "sell, rent, or lease" the property, as he might think "most for the interest" of the legatees; and that "in either case," his wife should "receive a child's part."

The *only* purpose for which the testator authorized his estate to remain unsettled, beyond the period necessary for an ordinary final administration, was, that his wife and

children might have the use in common of the property, for their support, for a specified time.   When an event occurred which, by the terms of the will, prevented the consummation of this purpose, there was no authority to postpone a final settlement to any remote particular period.   What purpose was to be accomplished by such a postponement? None was named by the testator, and none can be supplied by judicial interpretation, without adding terms to his will.

The power conferred upon the executor, to rent or lease, was not required to be exercised for any specified period; and in conferring this power, it was not intended by the testator that the executor should rent or lease until Fanny Ann should attain to the age of sixteen, *or* that he should retain the property the same length of time for the use and support of the legatees, either one or the other in his discretion.   The discretion conferred related exclusively to the selling, renting, or leasing; and if the executor should elect not to sell, but to rent or lease, what was intended by the testator as to the length of time this power should be exercised?   It could not have been intended that the duration of the power should rest in the discretion of the executor; and in the absence of any fixed period by the will for its existence, or of any named specific purpose to be accomplished by its exercise, from which the period of its duration might be inferred, the law would hold, that the power could be exercised for such period only as might be necessary, under all the circumstances of the case, to prepare the estate for final settlement, effect a proper sale, and bring the administration to a close.

This construction is in harmony with another important provision of the will, to which effect must be given.   The testator directed that his wife should receive, in the event of her marriage, "a child's part;" by which he meant an equal share with the children, severally, of the whole estate. What was intended as to the time when she should receive this share?   The will is silent on this question; but it must have been intended that she should receive it as soon as the estate was in condition for the property to be sold for its payment, together with the payment of the respective legacies to the children.   The wife of the testator married

ten years before Fanny Ann arrived at the age of sixteen. This marriage, by the terms of the will, as we have seen, excluded her from all participation in the use and enjoyment of the property of the estate; and if not entitled to receive the legacy bequeathed to her, in the event of her marriage, until Fanny Ann should attain to the age named, then, for the period of ten years, the wife would receive nothing. The testator never could have intended the accomplishment of such a result as this. No allotment to her of a child's part, on a partition of the estate without a sale, could have been made; for, as was held by this court in another case between the same parties, one effect of the will in question was, "to transmute the land into personalty, and this gave to each legatee the right to have it sold, and took away from each one the separate right to re-convert his single share, and thus have the sale of a fraction."— *High v. Worley*, 33 Ala. 196. A sale, then, was indispensable, and might have been enforced by the wife to enable her to receive the legacy bequeathed to her; and this, of itself, involved the necessity of a final settlement of the estate, which might have been coerced by either one of the legatees.

2. Having determined that the administratrix with the will annexed might have been called to a final settlement of the estate, on her intermarriage with Nathan D. Worley, the next question is, what effect the lapse of time, which occurred between that event and the date of the commencement of this suit, has upon the cause?

Three years elapsed between the date of the probate of the will, and the date of the marriage of the administratrix. Nancy E. High, appellee's intestate, died ten years after the occurrence of the last named event; and more than twenty-one years elapsed, after the marriage, before the bill in this cause was filed.

As was observed by STONE, J., in *McArthur v. Carrie's Adm'r*, (32 Ala. 75,) "In this, as in most of the States of this Union, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. This period is sometimes longer,

and sometimes shorter; dependent on the nature of the property, and the character of the transaction. By common consent, twenty years have been agreed on, as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed.—See, also, *Rhodes v. Turner and Wife*, 21 Ala. 210; *Barnett v. Tarrence*, 23 Ala. 463; *Gantt's Adm'r v. Phillips*, 23 Ala. 275; *Harvey v. Thorpe*, 28 Ala. 250; *Lay v. Lawson*, 23 Ala. 377; *Milton v. Haden*, 32 Ala. 30; *Wyatt's Adm'r v. Scott*, 33 Ala. 313; *Austin v. Jordan*, 35 Ala. 642. The case of *Blackwell's Adm'r v. Blackwell's Distributees*, (33 Ala. 57,) was excepted from the influence of this presumption, on account of the peculiar facts and circumstances of that case.

These legal presumptions, by which conflicting claims and titles are set at rest, are not always founded on the belief that the thing presumed has actually taken place. "Instead of belief, which is the foundation of the judgment upon a recent transaction, the legal presumption in matters of antiquity holds the place of particular and individual belief."—*Giles v. Barremore*, 5 John. Ch. Rep. 545. Grants have repeatedly been presumed, in England, against the crown; "not that the court really thinks, as Lord Mansfield observed, that a grant has been made, because it is not probable that a grant should have existed without its being upon the record, but they presume the fact for the purpose, and from a principle, of quieting the possession." *Giles v. Barremore, supra; Eldridge v. Knott*, Cowp. 214; *Hillary v. Waller*, 12 Ves. 252; *Johnson v. Johnson*, 5 Ala. 90. As Chancellor Kent has said, ( *Giles v. Barremore, supra,*) "These presumptions, to be drawn by the courts, in the case of stale demands, are founded in substantial justice, and the clearest policy. If the party, having knowledge of his rights, will sit still, and, without asserting them, permit persons to act as if they did not exist, and to acquire interests, and consider themselves as owners of the property, there is no reason why the presumption should not be raised."

In the case before us, the lapse of time, dating from a period when the administratrix might have been called to a final settlement of the estate, raises the presumption that the estate has been fully administered, and the respective

legacies paid. The result is, that the decree of the chancellor must be reversed, and the bill dismissed; and the appellee must pay the costs of this court, and of the court below.

BYRD, J., having been of counsel in the court below, did not sit in this case.