## PHILIPPI *v.* PHILIPPE & Others.

APPEAL FROM. THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF ALABAMA.

Argued April 22, 1885.—Decided May 4, 1885.

Although it is true that when the relation of trustee and *cestui que trust* exists and is admitted by the trustee, lapse of time is no bar to relief in equity against the trustee in favor of the *cestui que trust,* yet, when the trustee repudiates the trust in unequivocal words, and claims to hold the trust property as his own, and. such repudiation and claim are brought to the notice of the beneficiary in such manner that he is called upon to assert his equitable rights, the statute of limitation begins to run from the time when they thus come to his knowledge.

In Alabama, even in the absence of a statute of limitation, if twenty years are allowed to elapse from the time when proceedings could have been instituted for the settlement of a trust, without the commencement of such proceedings, and there has been no recognition, within that period, of the trust as continuing and undischarged, a presumption of settlement would arise, operating as a continuing bar.

When the lapse of twenty years raises in Alabama the presumption of payment and satisfaction of an equitable claim, the provision of § 2, Ordinance 5, of the Constitutional Convention, adopted September 27, 1865, that "in computing the time necessary to create the bar of the statutes of limitation and non-claim, the time elapsing between the 11th of January, 1861, and the passage of this ordinance shall not be estimated" does not affect the presumption unless within that period there has been some recognition of the liability which it is sought to enforce.

The appellant was the plaintiff in the Circuit Court. The original bill was filed October 20, 1879. It was demurred to and the demurrer sustained. The plaintiff having obtained leave to amend, filed an amended bill, in which he stated his case substantially as follows :

The plaintiff is the son of Angelo M. Philippi, deceased. Some time previous to the year 1845 the said Angelo M. Philippi and Antonio Philippe, his brother, one of the defendants, were equal partners in carrying on in the City of Mobile, in the State of Alabama, a boarding-house and saloon, in which business they prospered. In 1845 Angelo decided to revisit

his native country, the Island of Corsica. Before leaving Mobile he placed all his affairs, business, money and property in the keeping of his brother Antonio to manage for him, and the latter having accepted the trust, Angelo left the United States and went to Corsica. Antonio, after the departure of his brother, continued the partnership business for the joint benefit of both. He managed his brother's affairs and property and the partnership business with such skill and success that in May, 1847, he had in his possession the sum of $10,000 belonging to Angelo, upon which he agreed to pay interest. For the year ending November, 1847, the profits of the joint business were $8,000, and the joint income from their slaves for the same period was $4,500. For a time Antonio kept true accounts of these profits and incomes, fixing Angelo's share therein. He invested these accumulated gains of himself and his brother, Angelo, in real estate, taking, however, the titles in his own name.

In the year 1848 Antonio held, as the joint property of himself and Angelo, six houses and lots in the City of Mobile, valued at $26,000; subsequently to 1848 he bought a large amount of real estate, which he paid for out of the profit and incomes derived from the trust funds and from the slaves, and business jointly owned by himself and his brother.

During their long separation the relations of the brothers continued harmonious, and a correspondence was kept up between them.

By letters dated respectively, May 5, 1847, and March 7, 1848, written in the Italian language, addressed by Antonio to Angelo, translations of which, marked Exhibits D and E, are attached to the bill, the former acknowledged the trust.

Angelo returned from Europe in December, 1856. Antonio did not deny the admissions made in the letters of May 5, 1847, and March 7, 1848, or repudiate the trusts therein acknowledged, but promised to render a true and just account of the partnership and trust affairs to Angelo, and to make a final settlement of the same; but he delayed doing so, from time to time, and never made said statement of account or final settlement. Subsequently, by papers marked Exhibits F and G, at-

tached to the bill as parts thereof, Antonio expressly acknowledged the trust.

Angelo being of foreign birth, and imperfectly acquainted with the English language, and being also a man of few associates, and those few foreigners, ignorant as he himself was of the English language, never became fully informed of his rights and remedies under the laws of this country against his brother Antonio, and was averse to litigating with his brother, and repeatedly declared that the thought of a lawsuit with his brother was repulsive to him, and chose rather to hope that his brother would ultimately fulfil his promise to account to him and render to him what was his due.

Upon his return from Europe in December, 1856, Angelo was possessed of but scanty immediate means, whilst the defendant, Antonio, had at his disposal much wealth. Angelo remained in Mobile after his said return until his death, which occurred May 1, 1874, and was in a condition of poverty, and at times almost of distress, and died leaving his family in want.

The translation of the letter of May 5, 1847 (Exhibit D), written by Antonio to Angelo, contained the following passage: "2. Further, the certificate made by the hand of a notary as (that) I hold 10,000 dollars of thine in my hands, which I pay thee interest." This is the only part of the letter pertinent to the case. The translation of the letter of March 7, 1848 (Exhibit E), contains the following passage, which is the only one referring to the present controversy:

"Now let us speak a little of our affairs. I will tell thee that I have arranged the accounts the first of November, on which the profit of the affairs which we hold together are 8,000 dollars; 4,000 dollars I have marked them for thee to thy credit, which I wish that thou make me know what I must do with it. If thou wishest that I send them to thee, or wishest that I should do business with them for thy account. Since thou hast left I have made purchases; the house in which I am, 13,000 dollars. I have had a very beautiful one built on Dauphin Street, cost 7,000 dollars; bought one in the same street, which thou knowest, where Colobo keeps his bar-room, cost 6,000 dollars, thus counts six houses which we hold. The negroes give

me of interest the sum of 4,500 dollars a year without our trade. Thus, dear brother, thou knowest well what is mine has been and always will be thine, and thou I am persuaded thy sentiments are the same. For this I wish to tell thee thou hast no need that the interest should keep thee melancholy."

Exhibit F, appended to the bill, is a copy of a petition filed by Antonio, in a suit brought against him in the Chancery Court of Mobile County by the administrator and heirs of Angelo, to enforce the same trust set up in this case. Antonio in this petition, which was under oath, after denying that he was indebted to his brother Angelo at the time of his death, in any amount whatever, stated that the bill filed against him required him to admit or deny the making of a writing under his hand acknowledging the trust set up in the bill; and as the writing was alleged to have been made more than thirty years before, he could not answer the averment of his having executed a writing of the effect charged without seeing it, and prayed that the plaintiffs in that case might be required to submit the same to his inspection.

Exhibit F, attached to the amended bill, was an affidavit made and filed in the present cause by Antonio, in which he stated that it was wholly untrue that he was in any manner indebted to the heirs of Angelo, as charged in the bill; that Angelo returned from Europe to Mobile in the year 1853, a fact not mentioned in the bill, and that while so in Mobile, and before he left again, a full settlement was made between him and the affiant of all matters of account, and that in such settlement a balance of over $900 was found to be due the affiant from Angelo, which he had never paid. The affidavit further stated that about the year 1872 Angelo had a claim upon an insurance company for property destroyed by fire, which became a subject of litigation; that, being destitute of means, Angelo applied to affiant to lend him money to support his family until he could recover the insurance money, and affiant lent him $800 on his agreement to repay the loan out of the insurance money when collected; that Angelo compromised his demand against the insurance company for $3,000. and his creditors set up their claims against the fund

in the Chancery Court, and that in that proceeding Angelo filed the following affidavit:

" That he is entirely destitute of property, except the money and proceeds coming to him from the said policy of insurance. That it constituted all the property he had in the world, except a few articles of household furniture and wearing apparel for his family, which he is advised by law is exempt from execution and levy. And this affiant," Angelo, " now shows to the court that he is advised by counsel that he is entitled to one thousand dollars as exempt from attachment, levy, or garnishment, and he claims this amount shall be left to him unaffected by the creditors or any of their proceedings in this cause," &c.

The affidavit of Antonio (Exhibit F) further stated that he received out of said insurance money, on his claim for the money lent to Angelo, the sum of $329.27, and the other creditors got a like *pro rata* share out of the same fund.

Antonio Philippe, Angela F. Philippi, individually and as administratrix of the estate of Angelo M. Philippi, and the brothers and sisters of the plaintiff, children and heirs of Angelo M. Philippi, were made defendants to the bill. The prayer was for a settlement of the partnership, and an account of its property, profits and gains, and for a settlement of the trust, and that Antonio Philippe might be decreed to pay over to Angela F. Philippi, the administratrix, the one half of all the gains and profits of the partnership, with interest, and to deliver to the plaintiff and to the defendants, heirs at law of Angelo M. Philippi, all the real estate purchased by him in his own name, with the trust funds belonging to Angelo, or with his share of the profits of the partnership, and for a partition between Antonio Philippe and the heirs of Angelo M. Philippi of all lands held by the former in his own name, purchased with the joint funds of himself and Angelo M. Philippi, and for other relief.

The defendant, Antonio Philippe, demurred to the bill, and for grounds of demurrer, besides others, alleged that the cause of action set out in the bill was stale and barred by the statute of limitations of Alabama, and that the plaintiff, being merely

one of the heirs at law of said Angelo M. Philippi, was not entitled to the relief prayed in the bill. The Circuit Court sustained the demurrer and dismissed the bill, and the plaintiff appealed.

*Mr. Frederick G. Bromberg* for appellant.

*Mr. John A. Campbell* for appellees.

Mr. Justice Woods delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

We think that, upon the face of the amended bill, it is apparent that the plaintiff is not entitled to relief.

It appears from Exhibit G that Antonio Philippe contended that in the year 1853 he made a full settlement with Angelo, his brother, and that in such settlement there was a balance due to him from Angelo of over $900, which the latter had never paid. There is no averment in the bill that after 1853 there was anything due to Angelo from Antonio Philippe on account of the trust property or partnership business. It is true the bill alleges that in 1856, when Angelo returned to Mobile from Corsica, Antonio promised to render an account of the partnership and trust affairs, and make a final settlement of the same, but this falls short of an acknowledgment that there was anything due to Angelo, either on account of the trust or partnership property. The bill is bare of any averment that on a settlement of the trust and the partnership there would have been anything due to Angelo. The complaint of the bill is simply that, upon the return of Angelo M. Philippi to Mobile in 1856, Antonio promised to render an account and make a final settlement of their joint affairs, but had never done so.

But aside from this defect in the bill, we think it sufficiently appears on its face that, if any ground for relief is therein set forth, it is stale and prescribed by lapse of time, and therefore not entitled to the favor of a court of equity.

Conceding what is contended for by the counsel for plaintiff that the statute of limitations does not run against an ex_t ess

trust, it must be borne in mind that this rule is subject to the qualification that when the trust is repudiated by clear and unequivocal words and acts of the trustee who claims to hold the trust property as his own, and such repudiation and claim are brought to the notice of the beneficiary in such manner that he is called upon to assert his equitable rights, the statute of limitations will begin to run from the time such repudiation and claim came to the knowledge of the beneficiary. *Gratz* v. *Provost,* 6 Wheat. 481; *Oliver* v. *Piatt,* 3 How. 333; *Badger* v. *Badger,* 2 Wall. 87; *Kane* v. *Bloodgood,* 7 Johns. Ch. 90; *Bright* v. *Legerton,* 2 De G. F. & J. 606; *Wedderburn* v. *Wedderburn,* 4 Myl. & Cr. 41, 52; *Meriam* v. *Hassam,* 14 Allen, 516, 522; *Attorney General* v. *Federal Street Meeting House,* 3 Gray, 1; *Williams* v. *First Presbyterian Society,* 1 Ohio St. 478; *Turner* v. *Smith,* 11 Tex. 620.

The rule applicable to cases of this kind has been declared by the Supreme Court of Alabama in the case of *Nettles* v. *Nettles,* 67 Ala. 599, to be as follows: "It is true, as a general rule, that when the relation of trustee and *cestui que trust* is uniformly admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, lapse of time can constitute no bar to relief. But when the trust relation is repudiated, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief on the ground of lapse of time, and its inability to do complete justice." See also *Goodwyn* v. *Baldwin,* 59 Ala. 127; *Phillippi* v. *Phillippi,* 61 Ala. 41; *Maury* v. *Mason,* 8 Porter (Ala.) 211; *Lansdale* v. *Smith,* 106 U. S. 391.

It is plain upon the face of the bill that Antonio Phillippe, from and even prior to the year 1856, claimed as his own all the property which the bill alleged had been originally bought with trust or partnership funds, and that the knowledge of this claim was brought home to Angelo M. Phillippi. When the latter returned to Mobile in 1856 he found Antonio Philippe in the possession and enjoyment, and holding by title in his own name, all the property charged to be trust and partnership

property. And, although, according to the averments of the bill, he promised to render an account of the partnership and trust affairs and make a final settlement thereof, he never did so; but from the year 1856, down to the death of Angelo M. Philippi, a period of eighteen years, and down to the commencement of this suit, a period of over twenty-three years, he maintained his possession and used and enjoyed as his own the property and its issues and profits. During all the period between 1856 and his death, Angelo M. Philippi lived in the same city with Antonio Philippe in poverty, and some of the time in distress for want of means; but, so far as appears by the averments of the bill, the latter never paid him any part of the proceeds of the large property which the bill avers he was holding in trust. There could be no clearer line of conduct on the part of Antonio Philippe to show his repudiation of the alleged trust and his claim of title to the alleged trust property; and all was of necessity known by Angelo.

This claim of title was acquiesced in by Angelo, for, notwithstanding his poverty and distress for want of means, so far as appears by the bill, he never after the year 1856 requested of Antonio a settlement of the trust or demanded from him any part of the trust or partnership property, or the proceeds of either, but applied for and accepted money from him as a loan, and repaid it as far as his means would allow.

It is not averred that he was ignorant of any of the facts on which his rights rested, or that they were fraudulently concealed from him, but merely that he was not fully informed of his rights and remedies under the law, and the bill plainly intimates that he declined to sue his brother, not because he was not informed of the facts of his case, but because a suit with so near a relative was repulsive to him and because he trusted in his brother to do him justice.

It appears from the bill that the present suit was not brought for more than twenty-three years after the claim of title to the alleged trust and partnership property was thus set up by the acts of Antonio, and after an acquiescence therein of Angelo during the residue of his life, a period of eighteen years.

The longest period prescribed by the law of Alabama within

which actions may be brought is twenty years. Code of Alabama of 1876, §§ 3223 to 3231, inclusive. And by the provision of § 3758, the same limitations apply to suits commenced by bill in equity.

It is well settled by the decisions of the Supreme Court of Alabama, that, even in the absence of a statute of limitations, if twenty years are allowed to elapse from the time at which proceedings could have been instituted for the settlement of a trust without the commencement of such proceedings, and there has been no recognition or admission within that period of the trust as continuing and undischarged, a presumption of settlement would arise operating as a positive bar. *Rhodes* v. *Turner*, 21 Ala. 210; *Blackwell* v. *Blackwell*, 33 Ala. 57; *Worley* v. *High*, 40 Ala. 171; *Ragland* v. *Morton*, 41 Ala. 344; *Harrison* v. *Heflin*, 54 Ala. 552; *Greenlees* v. *Greenlees*, 62 Ala. 330; *McCarty* v. *McCarty*, 74 Ala. 546.

The same general rule has been laid down by this and other courts as the settled law of equity jurisprudence. *Elmondorf* v. *Taylor*, 10 Wheat. 152; *Bowman* v. *Wathen*, 1 How. 189; *Wagner* v. *Baird*, 7 How. 233; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Hovenden* v. *Annesley*, 2 Sch. and Lef. 607, 636; *Cholmondeley* v. *Clinton*, 2 Jac. and Walk. 1, 138. These authorities are pertinent and conclusive of the present case.

We have been referred by counsel for appellant to § 2 of ordinance No. 5, adopted on September 27, 1865, by the Alabama Constitutional Convention, then assembled, which provided that "in computing the time necessary to create the bar of the statutes of limitation and non-claim, the time elapsing between the 11th of January, 1861, and the passage of this ordinance shall not be estimated;" and it is insisted that, after deducting the period mentioned, the defence of the staleness of the plaintiff's claim is not sustained. The authorities already cited are an answer to this contention. But it has been expressly held by the Supreme Court of Alabama that the time during which the statutes of limitation were suspended by the ordinance above mentioned is not to be deducted from the period of twenty years, the lapse of which raises the presumption of payment and satisfaction, and creates a positive

bar, unless within that period there has been some recognition of the liability which it is sought to enforce. *Harrison* v. *Heflin, McCarty* v. *McCarty, ubi supra.* No such recognition is averred.

The plaintiff's case appears, therefore, upon the face of his bill, to be stale and unworthy the favor of a court of equity.

*Decree affirmed.*